## LAKE ERIE & WESTERN RAILWAY COMPANY v. HOBBS ET AL.

[No. 5,498. Filed April 24, 1907. Rehearing denied June 25, 1907. Transfer denied November 19, 1907.]

1. APPEAL.—*Law of the Case.—Prior Decisions Involving Same Transaction.*—The Supreme Court's decision on a complaint similar to the one at bar and growing out of the same transaction will be followed by the Appellate Court in its decision on the complaint before it. p. 514.

2. RAILROADS.—*Setting Fires. — Insurance. — Subrogation. — Equitable Assignments.*—Where an insurance company pays to the assured the loss caused by the negligence of a railroad company in burning the insured property, such payment amounts to an equitable assignment of so much of the assured's claim against such railroad company, and subrogates the insurance company to the rights of the assured in enforcing same. p. 515.

3. SAME.—*Fires.—Insurance.—Excess.*—An assured, who suffers a loss in excess of the insurance received on account of a loss caused by a fire negligently set by a railroad company, has the right to recover such excess from such railroad company. p. 515.

4. ACTION.—*Personal.—Railroads.—Fires.—Insurance.—Owner.*—A right of action for the negligence of a railroad company in burning an assured's property is purely personal, and the insurer acquires a beneficial interest in such right to the amount of the insurance paid. p. 516.

5. SAME.—*Parties.—Insurance.—Owner.—Railroads.*—Where an insurance company pays a loss caused by the negligence of a railroad company in setting fires, the assured may, in common-law jurisdictions, maintain an action for himself and as trustee for the insurer; or in case of the assured's refusal, the insurer may maintain it in assured's name; or the insurer may file a bill in equity making the assured and the railroad company parties. p. 516.

6. SAME.—*Parties.—Insurance.—Owner.—Railroads.*—Under code procedure the insurer, paying the loss, may alone or jointly with the owner of property maintain an action against the railroad company negligently burning such property. p. 517.

7. PLEADING.—*Parties.—Settlement of Rights in One Action.*—The modern tendency is to sweep away ancient and useless forms and

technicalities and determine, in a single action, the substantial rights of the parties to a transaction. p. 517.

8. PLEADING.—*Parties.—Insurance.—Railroads.—Equitable Rights. —Cross-Complaint.*—Where an insurance company pays for a portion of the assured's loss caused by the negligence of a railroad company in burning assured's property, such owner may maintain his action claiming the whole amount and make the insurer a defendant, under §269 Burns 1901, §268 R. S. 1881, without showing any reason for failure to join the insurer as plaintiff; and the insurer may then set up its rights in a cross-complaint, demanding its share of the recovery. p. 518.

9. SAME.—*Complaint.—Law.—Equity.*—Where the facts stated in a complaint, under the code, entitle the plaintiff to any relief, either at law or in equity, such complaint is sufficient on demurrer. p. 519. •

10. ACTION.—*Railroads.—Fires.—Insurance.—Satisfaction and Discharge.*—A railroad company which has negligently burned assured's property has no just cause of complaint at the manner of the distribution of its payment, so long as it is discharged from all liability by such payment. p. 519.

11. APPEAL.—*Briefs.—Waiver.*—A failure to present questions on appeal as required by Appellate Court rule twenty-two is a waiver of such questions. p. 520.

12. TRIAL.—*Interrogatories.—Railroads.—Setting Fires.*—Answers to interrogatories to the jury that the railroad company's engine was inspected and found in good condition at Lima, Ohio; that it was run by skilled men; that when it passed Hobbs, Indiana, it was emitting coals as large as beans and peas; that it had an "insufficient spark-arrester" and that the crew "said" they had no notice of the emission of such coals, are not irreconcilable with a verdict for plaintiff. p. 520.

13. RAILROADS.—*Negligence.—Setting Fires.—Question for Jury.*— Whether a railroad company was negligent, under all of the circumstances, in operating an engine which emitted coals of fire as large as beans and peas, is a question for the jury. p. 521.

14. TRIAL.—*Interrogatories.—Negligence.—Several Acts of.—Proof of One.*—Where several acts of negligence are alleged, and the answers to the interrogatories to the jury fail to negative all, a general verdict for plaintiff should stand. p. 521.

15. SAME.—*Instructions.—Damages.—Fires. — Railroads. —* An instruction, in action against a railroad company for damages caused by fires, that the measure of damages was the reasonable value of the property, is not prejudicial to the company, though a portion of such loss was real property, the proper value of such loss being the difference in value of the land before and after the fire. p. 522.

16. SAME.—*Erroneous Instructions.—Curing. by Interrogatories.*—

Where the answers to the interrogatories to the jury show that appellant was not harmed by an erroneous instruction, the judgment will not be disturbed. p. 522.

17. TRIAL.—*Instructions.—Witnesses.—Credibility.—Clerical Error.* —An instruction that the jury should reconcile all of the evidence, if possible, but if they could not, then they should believe the witnesses they "deem most worthy of credit," and disbelieve those they "deem most worthy of credit," considered with other instructions is not misleading, the word "unworthy" evidently being intended in the latter clause. p. 523.

18. APPEAL.—*Instructions.—Duplication.—*It is not error to refuse instructions requested, where they are covered substantially by those given. p. 524.

19. SAME.—*Weighing Evidence.—*The Appellate Court will not weigh conflicting oral evidence. p. 524.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by William S. Hobbs against the Lake Erie & Western Railway Company and the Ohio Farmers Insurance Company. From a judgment in favor of plaintiff and the insurance company, the railroad company appeals. *Affirmed.*

*John B. Cockrum, Shirts & Fertig,* and *Hawkins, Smith & Hawkins,* for appellant.

*Nash & Teter, Kane & Kane,* and *Dan Waugh,* for appellee, Hobbs.

*Elliott & Elliott,* for appellee insurance company.

HADLEY, J.—This was an action by appellee Hobbs to recover damages for loss of property by fire by reason of the alleged negligence of appellant, and cross-action by appellee Ohio Farmers Insurance Company to recover, on account of the same alleged negligence, for the amount of insurance paid to said Hobbs. The amended complaint was in two paragraphs, and made appellant and appellee insurance company defendants. The appellee insurance company filed a cross-complaint in two paragraphs. Demurrers were filed by appellant to the first and second paragraphs of the complaint and to the first and second paragraphs of cross-complaint, each of which demurrers was overruled. Appellant then moved to strike out the cross-complaint, which was also

overruled.   Issue was properly joined by all the parties to
the different pleadings, appellee Hobbs filing a general denial
to the cross-complaint of appellee insurance company and to
affirmative answers of appellant.   Trial by jury and verdict
for $460 for appellee Hobbs on his complaint and for $990
for appellee insurance company on the cross-complaint.   In-
terrogatories numbered from one to one hundred twelve
were answered by the jury.   Appellant moved for judg-
ment in its favor on the answers to interrogatories upon the
whole case, and also as to each paragraph of the complaint
and cross-complaint separately, all of which were overruled.
Motion was also filed by appellant for a new trial as to the
whole case, and separate motions for new trial upon the is-
sues on the complaint and cross-complaint, each of which was
overruled.

The overruling of the demurrers to the first and second
paragraphs of complaint are first presented.   These para-
graphs are substantially the same as the first and
second paragraphs of complaint in the cases of *Lake*
1.
*Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574, and
*Lake Erie, etc., R. Co.* v. *Ford* (1906), 167 Ind. 205, actions
growing out of the same fire, and under the authority of
those cases the demurrers thereto were properly overruled.
The first and second paragraphs of the cross-complaint of ap-
pellee insurance company, after reciting that it was engaged
in the fire insurance business, aver the facts in the same
words as contained in the first and second paragraphs of the
amended complaint.   Each then alleges that prior to the fire
said insurance company insured the buildings of said Hobbs,
which were worth $1,500, and that "by reason of and on ac-
count of the destruction of said property by fire, by and
through the negligence, carelessness, and wrongfulness of
said Lake Erie & Western Railroad Company, as herein
stated and not otherwise, said insurance company was com-
pelled to and did, on April 29, 1902, pay under such policy,
by its terms, the full amount of said insurance, to wit,

$1,000; that, by reason of the facts aforesaid, cross-complainant says it has been subrogated to all the rights of said William S. Hobbs," closing with the averment "that, by reason of the facts aforesaid, it has sustained damages in the sum of $1,000." Appellant's motion to strike out the cross-complaint is on two grounds: (1) "That the cross-complaint was irrelevant and surplusage; (2) that the original action's being one to recover for an alleged tort a cross-complaint cannot be filed for the purpose of procuring a separate recovery for parts of the same tort." The overruling of the demurrer and motion will be considered together.

It is well settled by the authorities that where insured property is destroyed by the negligent act of another, and the insurer pays the insured for said loss according to the contract, such payment to the owner does not bar the right of recovery against the party originally liable for the loss; but such payment creates an equitable assignment to the insurer of the amount embraced in such payment. This equitable assignment does not create a new right of action in the insurer, but subrogates the insurer to the existing right of action of the insured, and can only be enforced in the right of the latter. *Phenix Ins. Co.* v. *Pennsylvania R. Co.* (1893), 134 Ind. 215, 20 L. R. A. 405, and cases cited; *Gracie* v. *New York Ins. Co.* (1811), 8 Johns. *237, *245; *Baltimore, etc., R. Co.* v. *Countryman* (1896), 16 Ind. App. 139; *Mason* v. *Sainsbury* (1782), 3 Doug. 61; *Yates* v. *Whyte* (1838), 4 Bing. N. C. 272; *Rockingham, etc., Ins. Co.* v. *Bosher* (1855), 39 Me. 253, 63 Am. Dec. 618; *Newcomb* v. *Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, 10 Am. Rep. 746; 4 Joyce, Insurance, §3574.

It is equally well settled that where the assured sustains a loss in excess of the insurance received, he has an undoubted right to have the excess satisfied by action against the wrongdoer. *Newcomb* v. *Cincinnati Ins. Co., supra;* 4 Joyce, Insurance, §3574; *Phoenix Ins. Co.* v. *Erie, etc., Trans. Co.* (1896), 117 U. S. 312, 6 Sup.

Ct. 750, 29 L. Ed. 873; *Nevil* v. *Clifford* (1882), 55 Wis. 161, 12 N. W. 419.

4. The right of the property owner to recover damages for its destruction is not an incident to property in the thing destroyed, but is a personal right, and the insurer acquires a beneficial interest in that right of action in proportion to the sum paid by him to the owner on account of such destruction. *Phoenix Ins. Co.* v. *Erie, etc., Trans. Co., supra.* Any other rule would be unjust. Since, if the owner were permitted to recover from the insurer and also from the tort-feasor, he would be receiving more than the destroyed property was worth, and thus profit by disaster. On the other hand, if payment by the insurer was an acquittance of the wrongdoer, it would enable him to escape the penalties of his own wrong and receive the benefits of an insurance for which he never paid. And while it is clear, in both reason and authority, that the insurer shall be thus subrogated and his rights protected, there is some apparent conflict in the authorities as to how his rights shall be enforced. An examination of the authorities, however, discloses the rock upon which they split, and renders their reconciliation easy.

5. In those forums where the common-law procedure prevails, it is uniformly held that either the assured must maintain the action as trustee for the insurer, or, upon his refusal, the insurer must maintain it in the name of the insured. In the latter case, if the insurance covers the whole loss, the insured is only a nominal party and has no control over the action. Or, in a proper case, the insurer might file his bill in equity, making all parties defendants, and thus have his rights adjudged and determined. Bliss, Code Pl. (3d ed.), §65; *Rockingham, etc., Ins. Co.* v. *Bosher, supra; Hart* v. *Western R. Corp.* (1847), 13 Met. (Mass.) 99, 46 Am. Dec. 719; *Phoenix Ins. Co.* v. *Erie, etc., Trans. Co., supra.*

But in those courts where the code procedure prevails the

rule of practice is different. There the rule "that actions shall be maintained by the real party in interest"

6. eliminates the fictitious or nominal party, and it is therefore held with practical unanimity in such jurisdictions that, where the insurance covers the whole loss and the insured is satisfied, the insurer may sue independently in his own name, but in assured's right, for the amount of insurance paid. And in case the insurance only partially covers the loss, and the insured is unsatisfied, the insurer and insured may join in an action as plaintiffs against the tort-feasors. *Newcomb* v. *Cincinnati Ins. Co., supra;* Bliss, Code Pl. (3d ed.), §65; *Grain* v. *Aldrich* (1869), 38 Cal. 514, 99 Am. Dec. 423; *Phenix Ins. Co.* v. *Pennsylvania R. Co., supra; Wiggins* v. *McDonald* (1861), 18 Cal. 126; *Singleton* v. *O'Blenis* (1890), 125 Ind. 151; *Lapping* v. *Duffy* (1874), 47 Ind. 51. So far the way is clear. But in the case at bar neither of the forms just given was pursued. Here the pleadings show that the loss was greater than the insurance. The insured brought the action for the whole amount of the loss, making the insurer a party defendant to answer to its interest, without averring what that interest was or that it had refused to join as plaintiff. The insurer returns with the cross-complaint, setting up the wrong, the loss, the payment of the amount of insurance, and asking a subrogation, and thereby a judgment *pro tanto.* Appellant insists that this procedure cannot be maintained; that it is a splitting of the cause of action—a tort. This procedure appears to be new. Counsel have not cited, and, after careful investigation, we have been unable to find, any authority in exact terms approving or disapproving it. But this does not necessarily mean it may not be maintained.

Modern thought and development are averse to the subtleties and technicalities of the ancient forms of procedure whereby, in courts of justice, the ends of justice were

7. oftentimes defeated. The adoption of our code was in the line of this legal progression. By it the dis-

tinctions between common-law and equity practice were abolished, ancient forms effaced, and the intent clearly expressed that an ultimate determination of all questions, legal or equitable, or both, between the parties to the transaction, should be had in one judgment.

By §263 Burns 1901, §262 R. S. 1881, it is provided: "All persons having an interest in the subject of the action, and in obtaining the relief demanded, shall be joined as plaintiffs, *except as otherwise provided in this act.*" (Our italics.) Section 269 Burns 1901, §268 R. S. 1881, provides: "Any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved." Section 270 Burns 1901, §269 R. S. 1881, provides: "Of the parties in the action, those who are united in interest must be joined as plaintiffs or defendants; but, if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint." Construing these sections together, as we must, it appears that, where parties are united in interest, they should be joined as plaintiffs or defendants under §270, *supra.* But where one of the parties claims an interest in the subject of the action, and this claim is disputed by the other, then it is necessary, for a full determination of the questions involved, for one to be a plaintiff and the other a defendant, under §269, *supra.* And, where the pleadings show that such a controversy exists, said latter section does not require the plaintiff to state the reason why such other party is made defendant. The averments of the complaint and cross-complaint exhibit a controversy between plaintiff and cross-complainant. The plaintiff asks for judgment for the whole loss. The cross-complainant asserts an equitable assignment to it of a stated portion of whatever the plaintiff may be entitled to recover. This is a controversy that each has a

right to have determined in this suit. If, as appellant contends, they should be joined as plaintiffs, then their controversy, the division of the recovery, must be determined by another suit. This is unnecessary and unreasonable.

Under the code, legal and equitable relief are administered in the same forum and according to the same general plan.

9. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, or merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when, upon his facts, he is entitled to no relief either at law or in equity. All the parties to a transaction have a right to have all of the questions involved in such transaction settled in one proceeding. And where, as here, there is an equitable interest in the controversy between the two principal parties, either the plaintiff or defendant has the right, if he so desires, to have all the parties having any such interest before the court, in order that its judgment shall be a final determination of the whole matter, and leave nothing to be done by piecemeal.

While it is true the cross-complaint alleges the wrongs of appellant and loss of appellee Hobbs in substantially the same words of the complaint, yet it is clear that cross-

10. complainant does not seek to recover in its own right by an independent action, but that it does seek to recover to itself, in the right of Hobbs, by virtue of subrogation, a portion of the damages for which appellant is liable on account of its wrong. There is no possibility, under these pleadings, of appellant's being mulcted twice for the same tort. Counsel has not suggested, and we cannot perceive, wherein appellant can be harmed by such proceedings. It is liable for and should pay the full amount of the damages occasioned by its wrongful act. It is entitled to one action and one satisfaction, and this it obtains under this procedure; and whether the one action and one satisfaction is by one plaintiff and one cross-complainant, or by two plain-

tiffs, would seem immaterial. There is, in fact, no division or splitting of the cause of action, but a single recovery; and a division thereof, between two parties claiming interests therein, is sought at one and the same time. This is equitable and in accord with the fundamental principles of the code. The demurrer and motion were properly overruled.

The motion of appellant for judgment on the interrogatories and answers thereto, notwithstanding the general verdict, was properly overruled. This question is not properly presented by appellant, as its presentation does not conform to rule twenty-two. It has been frequently decided by this court in such cases that all questions not presented according to such rule are held to be waived. *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489; *American Food Co.* v. *Halstead* (1905), 165 Ind. 633; *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288.

But, nevertheless, we have carefully examined the question, and find that said interrogatories and answers thereto are not in irreconcilable conflict with the general verdict. While they do find that said train was equipped with a standard spark-arrester that was in good condition when it left Lima, Ohio, and that the train was run in the ordinary way by skilled men, they also find that said engine, when it passed the town of Hobbs, was emitting large quantities of sparks and coals of fire, as large as beans and peas, and that the cause of this was "an insufficient spark-arrester." It is found that none of the crew of said train had knowledge or notice that said engine was emitting such large sparks and coals of fire. There is an answer to an interrogatory as to whether they had such knowledge or notice, that "they said not." This is not a finding of a fact, and is far from finding that they had no such knowledge. In fact, it would imply that the jurors, notwithstanding the statement of the crew, from all the facts and circumstances, believed that such crew had such

knowledge, or should have had, as there was evidence introduced, of an experienced engineer, that if the trapdoor was down, or if an engine was, for some reason, throwing an unusually large quantity of sparks and coals, the train crew would easily discover it from the operation of the train. If the defect in the screen was of such a character that it emitted such large quantities of coals and fire, and the train crew knew this fact, or, in the exercise of reasonable observation and prudence, should have known of this defect, and still continued so to run the train as to emit such dangerous particles, the company would be liable for any damages thus caused. Applying the rule that all presumptions must be indulged in support of the general verdict as against answers to interrogatories, we can readily reconcile these answers with the general verdict upon the foregoing theory.

The evidence clearly shows that, when appellant's train passed through the town of Hobbs, it was emitting much larger sparks and coals of fire, and in much larger quantities than it would have done had it been properly equipped with a spark-arrester in good condition and properly operated. Whether it had been in this condition for a sufficient time to warrant the jury in finding that appellant's servants should have known of its defects, or whether, being in the condition in which the evidence shows it was, such servants should have known of it, or whether running the train in the ordinary way, under the natural conditions that prevailed at the time with reference to wind and dry weather, was negligence, as was averred, were all questions for the jury. By the general verdict the jury found that appellant was negligent in some of the averred respects. If they found appellant was negligent in any of the particular conditions above designated, such finding would not be in conflict with any of the answers to the interrogatories, and there was sufficient evidence to warrant such finding. In which event, judgment

on the interrogatories should not be entered. *Inland Steel Co.* v. *Smith* (1907), 168 Ind. 245.

Objection is made to the giving of the ninth instruction, requested by appellee Hobbs. It, in substance, instructed the jury that the measure of the damages was the reasonable value of the property destroyed. It is urged, that since a portion of the property destroyed was houses, fences, trees, etc., and therefore a part of the real estate, a measure of the damages of this portion of the property was the difference in value between the real estate before the fire and its value after the fire. That the latter rule is the proper method of measuring damage to real estate, there can be no denial; but it is a rule for the purpose of ascertaining the real value of the thing destroyed, and is to the advantage of the landowner. An apple or a shade tree may be worthless apart from the soil, but growing in it, may be very valuable. When tortiously destroyed, the owner is entitled to recover its value as a part of the real estate, and with respect to the beauty, productiveness, and advantages it imparts to the real estate. And the rule, just given, as to the method of determining that value, has been adopted. If, however, the court sought to limit the consideration of the jury to the valuation of this property apart from the soil, it is a restriction in favor of the appellant, of which it has no right to complain.

But the value of all of the property, including the improvements, was properly in evidence and is absolutely undisputed. This evidence shows that the difference in the value of the real estate before and after the fire was $1,350, and the jury specially found that the personal property destroyed was of the value of $580, although the evidence showed it was worth very much more. The jury, however, rendered verdict for $1,460 for all of the property, very much less than the undisputed evidence

showed the property destroyed was worth, so that it is clear appellant was in noway harmed by this instruction.

Objection is made to instruction one, given by the court on its own motion. This is the instruction that is usually given by the courts throughout the State as to the credibility of the witnesses. In it the court said: "It is your duty to reconcile the statements of the witnesses so as to give credence to all the testimony, if you can. But if you cannot do this on account of contradictions, then it would be your duty to believe the witnesses you deem most worthy of credit, and disbelieve the witnesses you deem most worthy of credit." Considering the objectionable expression in connection with what goes before, and the subsequent instruction given by the court, which was also a stock instruction as to how they should consider and weigh the statements of the different witnesses, their demeanor, the reasonableness of their stories, etc., it is apparent that the use of the last "worthy" was a clerical mistake, and was used instead of "unworthy." It is hardly conceivable that the court read it as it appeared in the record, but if he did so the jury could not have been misled by it, and, being upon so remote an element of the trial, we cannot believe that the appellant was harmed in any of its substantial rights, and it has not indicated or suggested how, by any possibility, its rights may have been so affected.

Objection is made to the giving of the second and third instructions at the request of plaintiff, and to the first instruction given at the request of cross-complainant, but no sufficient reason is given in support thereof. Objection is also made to the giving of the second and third instructions given at the request of cross-complainant, but under our view of the case, as given in the discussion of the sufficiency of the cross-complaint, the objection made is not tenable. Objection is also made to the refusal of the court to give the fifth, tenth, and eleventh instructions asked by appel-

lant. All of these instructions were fully covered by the instructions given by the court. In fact, the instructions given by the court were very complete and covered every phase of the case with as great particularity as the law requires, and they certainly were as favorable to the appellant as the appellant had any right to ask. Objection is made that the court erred in overruling the motion for a new trial as against Hobbs, and also as against the cross-complainant. The only reason assigned that has not heretofore been discussed, is that the evidence did not prove any negligence on the part of the appellant. On this proposition the evidence clearly shows facts and circumstances from which the jury might reasonably infer negligence on the part of appellant, as heretofore shown in this opinion.

Judgment affirmed.