## GOECKER v. McOSKER.

[No. 22,008. Filed May 28, 1912.]

1. ELECTIONS.—*Contest.*—*Recount of Ballots.*—*Statutes.*—*Repeal.*— Though it was the policy of the Australian ballot law (Acts 1889 p. 157), and subsequent statutes, by providing for the destruction of all ballots except protested, disputed or uncounted ballots, to render the returns of the election boards and canvassing boards final and conclusive, except as to such protested, disputed or uncounted ballots and for fraud, these laws did not repeal the provisions of the election laws of 1881 (Acts 1881 [s. s.] p. 482, §4738-4768 R. S. 1881) for contesting an election or recounting the ballots, but limited their scope, with reference to reviewing and determining the correctness of the count, to an examination of the ballots preserved. p. 613.

2. ELECTIONS. — *Ballots.* — *Preservation.*—*Recount.*—*Contest.*—The act of March 5, 1909 (Acts 1909 p. 162), provides for the preservation of "all ballots, voted and not voted, together with all protested, disputed or uncounted ballots," so that in cases where ballots, and not voting machines, are used and preserved as provided for, they are as fully subject to review and inquiry into the

result shown by them, either on a recount or contest, as under the laws prior to the election law of 1889. p. 614.

3. ELECTIONS.—*Contest.*—*Jurisdiction.*—*Complaint.*—Where a complaint to contest an election under §6995 Burns 1908, §4743 R. S. 1881, alleges facts showing the existence of grounds of contest under the statute, and was filed in the tribunal having jurisdiction to hear contests, the fact that it would have been good as a petition for a recount under §§6990-6994 Burns 1908, §§4738-4742 R. S. 1881, if it had been timely filed in the proper forum, does not render it subject to a demurrer for lack of jurisdiction of the court over the subject of the action. p. 614, 615.

4. PLEADING.—*Complaint.*—*Nature of Action.*—*Prayer.*—The prayer for relief does not determine the nature of an action, but the facts pleaded give it character and effect and determine the nature of the relief to which the pleader is entitled. p. 615.

5. ELECTIONS.—*Contest.*—*Recount of Ballots.*—*Complaint.*—*Allegations.*—A complaint to contest an election under §6995 Burns 1908, §4743 R. S. 1881, containing allegations of facts which are within the causes of contest, is not defective because the averments are so broad or general as to involve a review or canvass of all the preserved ballots, since a reëxamination of all the preserved ballots may be proper or even necessary in the determination of the contest. pp. 615, 616.

6. ELECTIONS.—*Contest.*—*Evidence.*—*Ballots.*—In an election contest the ballots cast by the qualified voters, and preserved as cast, are the primary and best evidence of who has received the highest number of votes. p. 616.

7. ELECTIONS.—*Contest.*—*Pleading.*—*Particularity.*—The strictness of pleading necessary in ordinary civil actions is not required in the statement of the grounds of contesting an election to a county office. p. 618.

From Jackson Circuit Court; *Joseph H. Shea,* Judge.

Action by William Goecker against Jerry McOsker. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*John M. Lewis, O. H. Montgomery* and *Frank S. Jones,* for appellant.

*Branaman & Branaman, Kochenour & Prince,* for appellee.

Cox, C. J.—This action was instituted by appellant under §6995 Burns 1908, §4743 R. S. 1881, before the Board of Commissioners of Jackson County to contest the election of appellee to the office of sheriff of that county. The two parties were rival candidates for that office. Upon issues

formed before the board, a hearing was had, and appellant failed to sustain his contest. He thereupon appealed to the circuit court, and filed an amended complaint, to which that court sustained appellee's demurrer. This appeal involves this ruling only.

Section 6995, *supra,* reads as follows: "The election of any person declared elected by popular vote to any office, whether state, county, township or municipal, may be contested by any elector who was entitled to vote for such person. The person contesting such election shall be known as the contestor; the person whose election is contested, as the contestee."

Section 7008 Burns 1908, §4756 R. S. 1881, states the causes on which any such contest may be waged, as follows: "First. For irregularity or malconduct of any member or officer of the proper board of judges or canvassers. Second. When the contestee was ineligible. Third. When the contestee, previous to such election, shall have been convicted of an infamous crime, such conviction not having been reversed nor such person pardoned at the time of such election. Fourth. On account of illegal votes."

Appellant's amended complaint, under five specifications, attempted to state facts establishing grounds for contest under the first, second and fourth causes. Specifications four and five, relating to the second statutory cause, were stricken out on appellee's motion, and appellant makes no complaint of that action. Omitting specifications four and five, the complaint is as follows: "The contestor complains of said contestee and says: That on the 8th day of November, 1910, that there was a general election held throughout the State of Indiana, for the purpose of electing State, County and Township officers: That at said election in said Jackson County, Indiana, this contestor and said contestee were candidates in said county of Jackson for the office of sheriff of said county; that this contestor and said contestee were the

only candidates voted for at said election for said office, except F. Browning, the prohibition candidate therefor, who received sixty-six votes, and except William H. Shutts, the socialist candidate therefor, who received one hundred twenty-five votes for said office. This plaintiff says that he was at the time of said election and now is an elector of said county and that he was then and there duly and legally entitled to vote in said election, and was at said time and has continued to be eligible and qualified to hold said office of sheriff. This contestor avers that there was received and counted for him as such candidate for said office 2,282 votes; that at said election there was received and counted for contestee for said office 2,295; that thereupon the said contestee, the said Jerry McOsker, was on the 9th day of November, 1910, declared elected to said office by the Board of Canvassers of said county. This contestor now contests the election of the said contestee, the said Jerry McOsker, to said office on the following grounds: Specification 1. That on account of the irregularity, illegality, mistakes and malconduct of the election officers, election boards and canvassers of each and all of the thirty-four election precincts of said county, the same being the total number of precincts therein, legal votes cast for the contestor therein for said office were not counted for him; and illegal votes cast therein for the contestee of said office were counted for the contestee; and the legal votes cast for the contestor therein for said office were not counted for any person for said office; and legal votes cast therein for the contestor for said office were uncounted; but considered and treated as marked, defaced and mutilated ballots; and that if all of said legal votes cast for contestor for said office in each and all of said precincts of said county had been properly and legally counted for contestor, he would have had and received a majority of all the votes cast in said county for said office, and would have been declared duly elected thereto by the said County Board of Canvassers. Contestor alleges that all of the ballots voted

and cast in each of the several precincts of said county as aforesaid have been preserved and filed in the office of the Clerk of the Jackson Circuit Court, as required by law, and that on a proper and legal recount of the ballots cast for contestor for said office in said several precincts it would appear and be established that contestor had received a plurality of all legal votes cast in said county for said office. Specification 2. Contestor alleges that there was irregularity, illegality, mistake and malconduct of the election officers, election board and canvassers of the first precinct, Jackson township of said County, in these things, to-wit: That they omitted, failed and refused to count for contestor all the legal votes cast for him therein for said office; that they wrongfully counted for the contestee as a candidate for said office more votes than he received therein. That they failed and omitted to count for contestor votes received therein for said office, but treated the same as marked, defaced and mutilated ballots. That said election officers and boards of said precincts wrongfully reported and certified that said contestee received 87 votes therein, and that contestor received but 69 votes therein for said office; and that contestor believes that he received a sufficient number of legal votes in said precinct that were uncounted for him and which, if counted for him, would have given him a majority of all the votes cast for said office in the several precincts of Jackson County. Contestor alleges that all the ballots and votes cast in said precinct at said election have been preserved and filed with the Clerk of the Jackson Circuit Court, as required by law, and that on proper recount of all the votes and ballots cast in said precinct for said office of sheriff, it would appear and be established that he had received a sufficient number therein, which added to other votes cast for him in the other precincts of said county for said office, as reported by the several boards of election therein, would give contestor the largest and highest vote cast for said office and more votes than the contestee received therein. Contestor alleges that

he is unable to give a more specific and definite description of
the ballots cast for him, and which were not counted and of
the marked and mutilated ballots, than as above stated, by
reason of said ballots being in the possession of the officer
charged with their preservation and keeping."

The allegations with respect to each of the other thirty-
three precincts in the county are in terms the same as the
one just quoted, except as to number of votes counted for
each of the candidates in the various precincts. The com-
plaint contains these further allegations: "Specification 3.
Contestor alleges that in each and all of the thirty-four pre-
cincts in Jackson County, Indiana, illegal votes were cast and
counted for the contestee for said office; that contestor can-
not give the number of illegal votes cast and counted for
contestee in any of said precincts because all the votes cast
and counted are now preserved according to law, and are in
the custody of the officer entitled to have charge of them,
and contestor does not have access to them and cannot ex-
amine said ballots; that if illegal votes had not have been
cast and counted for contestee in each of said precincts of
Jackson County, the total vote cast in all of said precincts
would have shown that contestor received the highest number
of legal votes cast for said office at the said election. Where-
fore, contestor prays that each and all of the ballots cast and
voted for the candidates for the office of sheriff of said
county at said election in all of said precincts in Jackson
County, Indiana, as preserved, filed with and now held by
the Clerk of the Jackson Circuit Court, be re-counted and
canvassed, and the correct vote received by the respective
candidates for said office be ascertained and established, and
that contestor be held and declared to be the duly elected
sheriff of said county, and for all other proper relief."

Appellee's demurrer to the complaint was for want of
jurisdiction over the subject-matter of the action, and for
want of facts alleged to constitute a cause of action.

It is first contended on the part of appellee that the ob-

vious theory of appellant's amended complaint is for a statutory recount of the ballots under the provisions of §§6990-6994 Burns 1908, §§4738-4742 R. S. 1881, which could only be ordered by the circuit court, or the judge thereof in vacation, upon petition there filed in the first instance within ten days after the Thursday succeeding the election, and as this proceeding was instituted before the board of commissioners, which had no jurisdiction to entertain a petition for and order a recount under the statute, the circuit court acquired none.   If the amended complaint were nothing more than a petition for a recount, this contention would have to be sustained.

Beginning with the enactment of what was called the Australian ballot law in 1889 (Acts 1889 p. 157), it has been the policy of the election laws, by providing for the 1. destruction by election boards, after the completion of the count, of all ballots except protested, disputed or uncounted ballots, to render the returns of the election boards and the canvassing boards final and conclusive, except as to such protested, disputed or uncounted ballots, and for fraud.  *State, ex rel.*, v. *Thornburg* (1912), *ante,* 178, 97 N. E. 534, and cases there cited.

But none of these laws repealed the preexisting laws enacted in 1881 (Acts 1881 [s. s.] p. 482, §§4738-4768 R. S. 1881) providing for a contest of an election, or for a recount of the ballots.   To the extent that ballots were destroyed in compliance with the law, the contest and recount statutes could not operate on or review them with a view of determining the correctness of the count, and the rights of contest and recount were narrowed and limited in their scope, so far as the ballots were concerned, to an examination of those preserved only.   *Bechtel* v. *Albin* (1893), 134 Ind. 193, 33 N. E. 967; *Hall* v. *Campbell* (1903), 161 Ind. 406, 68 N. E. 892; *State, ex rel.,* v. *Thornburg, supra.*

Before the enactment of the election law of 1889 (Acts 1889 p. 157) the preservation of the ballots was required,

and they were subject to review either under the recount or
contest statute, or, on an information in *quo warranto* to try
the title to an office, to aid in determining the question of
which candidate had received the highest number of legal
votes. §§4714, 4715 R. S. 1881, Acts 1881 (s. s.) p. 482,
§§35, 36; *Reynolds* v. *State, ex rel.* (1878), 61 Ind. 392, 423;
*State, ex rel.,* v. *Shay* (1878), 101 Ind. 36, 38; *Pedigo* v.
*Grimes* (1888), 113 Ind. 148, 13 N. E. 700; 15 Cyc. 425.

By the act, approved March 5, 1909 (Acts 1909 p. 162),
the preservation by the election board of "all ballots, voted
and not voted, together with all protested, disputed or
2.   uncounted ballots" was provided for, and the delivery
of them under seal to the custody of the clerk of the
circuit court.   By this enactment the policy of stopping in-
quiry into the correctness of the count of the ballots by the
election boards beyond the protested, disputed or uncounted
ballots was abandoned, and a return made to that which
permitted a full examination of all of the ballots. So it fol-
lows that since the act of 1909, *supra,* became a law, and in
cases where ballots, and not voting machines, were used, and
preserved as provided for, they are as fully subject to review
and inquiry into the result shown by them, either on a re-
count or contest, as under the laws prior to the enactment
of the election law of 1889, *supra.*   No other purpose in the
change of the law in this respect is visible.

With this view of the matter counsel for the parties to this
appeal seem to be in accord, and it is apparently the fact
that the act of 1909, *supra,* has restored the right to a re-
count to its former effectiveness that leads appellee to con-
tend that appellant's complaint is in reality a petition for a
recount, and therefore addressed to the wrong tribunal.   It
· may be conceded that the pleading would have been
3.   good as a petition for a recount under the statute if
it had been timely filed in the proper forum, but it
does not follow, as contended by counsel for appellee, that
its allegations taken in connection with its prayer for a re-

count irrevocably fix its character as such alone. The prayer for relief does not determine the nature of the action.

4. The facts pleaded give it character and effect, and determine the nature of the relief to which the pleader is entitled. *Bennett* v. *Preston* (1861), 17 Ind. 291; *Stribling* v. *Brougher* (1881), 79 Ind. 328; *Houck* v. *Graham* (1886), 106 Ind. 195, 6 N. E. 594, 55 Am. Rep. 727; *Miller* v. *City of Indianapolis* (1890), 123 Ind. 196, 24 N. E. 228; *McGuffey* v. *McClain* (1892), 130 Ind. 327, 30 N. E. 296; *Woodward* v. *Mitchell* (1895), 140 Ind. 406, 413, 39 N. E. 437.

Appellant alleges in his pleading that he contests the election of appellee, and thereupon proceeds in an attempt to allege facts showing the existence of grounds of con-

3. test under the statute, and this pleading he filed in the tribunal having jurisdiction to hear contests. The fact that he asks in the prayer for relief that all the ballots be canvassed and recounted, to disclose the truth of his allegations of irregularity and malconduct of the election officers in failing to count for him legal votes cast in his favor and in wrongfully counting for his opponent more votes than were cast for him, does not establish the character of the pleading as a petition for a recount and not to contest. The complaint was not subject to the demurrer for lack of jurisdiction of the court over the subject of the action.

It remains to inquire whether the complaint alleges facts sufficient to enable appellant to wage a contest. It is contended by counsel for appellee that a complaint, or

5. statement of cause of contest cannot be made so broad or general as to involve a review or canvass of all the preserved ballots. But if it contain allegations of facts which are within the causes of contest, it is not apparent why a statement of contest may not properly, and perhaps necessarily, involve a reëxamination of all preserved ballots. For it is the eligible candidate who receives the greatest number of the votes of the qualified electors, voting for the candi-

dates for the office involved, who is entitled to the office, and
therefore the ultimate question for decision in an election
contest is, Who has received the highest number of legal
votes? This question is best answered by the ballots
6.  when cast by qualified electors and preserved as cast,
in which case they are the primary and best evidence
of who has received the highest number of votes. *Dobyns* v.
*Weadon* (1875), 50 Ind. 298; *Hadley* v. *Gutridge* (1877), 58
Ind. 302, 315; *Reynolds* v. *State, ex rel., supra; State, ex rel.;*
v. *Shay, supra; Pedigo* v. *Grimes, supra; People* v. *McClellan*
(1908), 191 N. Y. 341, 84 N. E. 68; *Caldwell* v. *McElvain*
(1900), 184 Ill. 552, 56 N. E. 1012; *Leonard* v. *Woolford*
(1900), 91 Md. 626, 46 Atl. 1025; *People* v. *Holden* (1865),
28 Cal. 123; *Searle* v. *Clark* (1885), 34 Kan. 49, 7 Pac. 630;
*Hughes* v. *Holman* (1893), 23 Or. 481, 32 Pac. 298; 15 Cyc.
425.

Counsel rely on the case of *Borders* v. *Williams* (1900),
155 Ind. 36, 38, 57 N. E. 527, to sustain their contention
that the complaint does not allege sufficient facts. We
5.  find nothing in that case, if followed, to require this
complaint to be held insufficient. It was therein held
that a specification of a cause of contest, that the contestor
"had received a greater number of legal votes than had been
received by the contestee," was a mere conclusion, and not
the averment of a fact within the purview of the enumerated
causes for contest; and that a complaint in such case must
allege facts within the purview of the statutory causes, suf-
ficient to invalidate the election of the contestee. Clearly
that case has no force against this complaint, for it alleges
that by reason of the irregularity, illegality, mistakes and
malconduct of the election officers in each and all of the
thirty-four election precincts of the county, legal votes were
cast for appellant which were not counted for him, and that
legal votes cast for contestor were not counted for him, but
were treated and considered as marked, defaced and muti-
lated ballots. As it is also alleged that the returns, as made

in the canvass, showed that appellee had received 2,295 votes and appellant 2,282, if only one vote in each precinct had been lost to appellant in the manner alleged, he would, in reality, have received a greater number of votes than appellee.

While the complaint in question is in a sense general in its averments of irregularity and malconduct of the election officers in the counting of the ballots in each precinct, it does make allegations of facts in relation thereto, which, if shown by the ballots themselves, would change the declared result and give appellant a majority of the legal votes cast, and this brings it within the purview of the first cause of contest, and in reality within the rule declared in the case cited. It fairly advised the appellee of the cause of contest, and that an examination of the ballots would be required to determine it. A rule often quoted in disposing of objections to pleadings in election cases is stated in the case of *Mann* v. *Cassidy* (1857), 1 Brews. (Pa.) 11, 26, as follows: "It is obvious that if the court were to require the same precision and certainty in an election petition as in the pleadings between parties to a suit at law, the object of which pleadings is to produce a single issue, the difficulty of stating precisely the manner in which a fraud has been perpetrated or an undue return made, would, to a great degree, nullify the law itself, which designs that such charges should be investigated. The rule must not be held so strict as to afford protection to fraud, by which the will of the people is set at naught; nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well defined cause."

In the case of *Kreitz* v. *Behrensmeyer* (1888), 125 Ill. 141, 17 N. E. 232, 8 Am. St. 349, at page 172, the court said: "More particularity in pleading is not required than the nature of the subject is reasonably susceptible of, and it is obvious, in the very nature of things, that in most instances the candidate defeated by a miscount cannot know whose

ballots were miscounted. All he can be expected to know is, that about so many ballots were deposited for him at a given poll, and that the count does not agree therewith. If he knows more, it is accidental. Nor, in such case, is it of consequence whose ballot was miscounted, for the effect is the same, and the mode of proof is precisely the same, whether it was cast by one legal voter or another. It is, morever, evident, that the information upon which the contestant acts, must, to a very great extent, be hearsay. He cannot be expected to have been personally at each poll, much less to have known how each elector voted. Nor can he be expected to have personally supervised the counting at each poll—and therefore, however grossly and palpably he may have been wronged at several polls, all that he can say truthfully in respect to most of it is, that he is informed and verily believes.''

The fact that the contest statute provides a quick and easy method of determining a controversy in which not only the candidates for the office but the public are concerned, and requires its submission to an inferior tribunal not familiar with the technical procedure of ordinary civil actions, taken in connection with the very nature of the proceeding, implies that the most rigid strictness in pleading is not to be required in the statement of the grounds of contest. That the complaint or statement of cause of contest was sufficient to withstand a demurrer, is sustained by the following cases: *Nichols* v. *Ragsdale* (1867), 28 Ind. 131; *Dobyns* v. *Weadon, supra; Hadley* v. *Gutridge, supra; Hall* v. *Campbell, supra; Leonard* v. *Woolford, supra; Muir* v. *Beauchamp* (1900), 91 Md. 650, 47 Atl. 821; *Lawrence* v. *Wheeler* (1908), 77 Kan. 209, 93 Pac. 602; *Minor* v *Kidder* (1872), 43 Cal. 229; *Election Cases* (1870), 65 Pa. St. 20, 36; *Kilburn* v. *Patterson* (1887), 98 N. C. 593, 3 S. E. 491. See, also, 7 Ency. Pl. and Pr. 384; 15 Cyc. 404.

The cause is reversed, with instructions to the lower court

to overrule the demurrer to the complaint, and for further proceedings.

Note.—Reported in 98 N. E. 724. See, also, under (1 and 2) 15 Cyc. 429; (3 and 5) 15 Cyc. 404, 429; (4) 31 Cyc. 110. As to what irregularities will avoid elections, see 90 Am. St. 45. As to the effect of an election where the majority vote was for an ineligible candidate, see 124 Am. St. 211.