## GROVER v. MAROTT ET AL.

[No. 23,515. Filed June 30, 1922. Rehearing denied December 8, 1922.]

1. PLEADING. — Complaint. — Theory.— Determination.— Prayer for Relief.—The theory of a complaint is controlled by its leading allegations, and the prayer is merely advisory. p. 556.

2. PARTIES.—Joinder of Parties Plaintiff.—Common Interest in Subject-Matter.—Statutes.—In view of §263 Burns 1914, §262 R. S. 1881, providing that all persons having an interest in the subject-matter of an action, and in obtaining the relief demanded, shall be joined as plaintiffs, and §270 Burns 1914, §269 R. S. 1881, providing that parties united in interest must be joined as plaintiffs or defendants, and that, if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint, the rule as to the joinder of plaintiffs requires that all who unite as plaintiffs must have a common interest in the subject-matter of the action and each must be interested in the relief of the other, but equality of interest, or that such interest may not be legally severable, is not essential. p. 556.

3. PLEADING.— Complaint.— Sufficiency.—Several Plaintiffs.—A complaint by several plaintiffs must state a cause of action in favor of all, or it will be insufficient as against a demurrer for want of facts. p. 558.

4. JOINT ADVENTURERS.—Parties to Common Enterprise.—Good Faith.—Where defendant, a promoter of a syndicate scheme, induced plaintiffs to subscribe money to a common fund for the purpose of purchasing land as a joint investment, and all acted jointly and not separately, all parties, including defendants, were engaged in a common enterprise, and each was bound to act in the utmost good faith toward the other. p. 558.

5. JOINT ADVENTURERS.—*Promotion of Land Syndicate.—False Representations.—Action for Fraud.—Parties.*—Where defendant, a promoter of a syndicate scheme, induced plaintiffs to subscribe to a common fund for the purchase of land as a joint investment, good faith required that he acquaint his associates with all the facts known to him or connected with the transaction; and, where he falsely represented the purchase price, an action for damages on account of fraud was common to all the subscribers, and it was necessary that all should be joined as parties. (*McIntosh* v. *Zaring* [1898], 150 Ind. 301, distinguished.)   p. 558.

6. JOINT ADVENTURERS.—*Promotion of Land Syndicate.—Action for Fraud of Promoter.—Parties.—Heirs and Legatees of Subscribers.*—Where a promoter of a syndicate induced others to subscribe to a common fund for the purchase of land as a joint investment under an agreement which did not create a partnership relation between the subscribers, the right of action against the promoter for fraud was not one which, on the death of one of the subscribers, was required to be brought in the names of the survivors, and the legatees and heirs at law of the deceased members were parties in interest, and necessary in the determination of plaintiffs' damages.   p. 562.

From Marion Circuit Court (28,011) ; *Louis B. Ewbank*, Judge.

Action by George J. Marott and others against Arthur B. Grover and others. From the judgment rendered, the defendant named appeals. *Affirmed.*

*James M. Leathers,* for appellant.

*Ferdinand Winter, Charles O. Roemler, Frank C. Ayres* and *William L. Taylor,* for appellees.

MYERS, C. J.—Appellees, plaintiffs and cross-complainants, in the court below, recovered a judgment against appellant for $17,893.76. Appellant perfected an appeal to this court and assigned as error: (1) The overruling of his demurrer to the complaint and to each of the cross-complainants; (2) the overruling of his motion to require plaintiffs and cross-complainants respectively to separate their causes of action into separate paragraphs; (3) the overruling of his motion to

have the cross-actions tried separate and apart from the original action; (4) the overruling of his motion for a new trial.

Appellant takes the position that the pleadings challenged by the demurrers for want of sufficient facts "involved several causes of action for damages for alleged fraud in favor of the several plaintiffs, and not a joint one in favor of all; that plaintiffs and cross-complainants, if entitled to sue at all, must sue separately, each for the damages he has suffered." Under this statement of appellant, the first three errors here assigned may be considered together as asserting and challenging each pleading on the ground that neither affirmatively showed that all of the complainants had a common interest in the subject-matter of the action and in the relief sought.

The complaint in this case covers twenty-three typewritten pages of the record, but we will refer only to such facts as will tend to show its theory and scope. The material allegations of the cross-complaints were not materially different from those of the complaint. The judgment was for a gross amount. Consequently, for the purposes of this opinion, the complaint and both cross-complaints, except as to points where particularity is required, will be referred to as the complaint, and considered under one specification of error, overruling the demurrer to the complaint.

The cross-complainants were Sarah G. Dillman in her own right as the sole heir of William H. Dillman, deceased, and Kate F. McGowan in her own right and as trustee under the will of Hugh J. McGowan, deceased. The complaint states that all of the parties in interest other than plaintiffs refused to join and are made defendants.

It appears from the complaint that on and for some time prior to March 3, 1903, **J. H. McBride** of Cleve-

land, Ohio, was the owner of certain real estate located near that city, and, desiring to sell the same, gave appellant an option or contract of purchase at a price of $125,000. Thereafter, at the solicitation of appellant, plaintiffs, George J. Marott, Medford B. Wilson, Jacquelin S. Holliday, Robert Elliott, E. H. Darrach, August M. Kuhn, and cross-complainants' decedents, William H. Dillman and Hugh J. McGowan, with William E. Kurtz, James Whitcomb Riley, Burton E. Parrott, Harry J. Milligan, Henry Eitel, William Fortune and Henry C. Ellison, formed a syndicate and subscribed various sums of money as a common fund, which was entrusted to appellant as their agent for the purchase of the McBride real estate, which appellant falsely and fraudulently represented to be worth $160,000 and that it could be bought at that price and no less, when he then and there well knew it was worth only $125,000 and that it could be purchased for that sum, and that McBride was willing to sell the same to the syndicate thus formed for $125,000; that appellant also then well knew that the members of the syndicate did not know the value of this real estate, nor that the owner thereof would sell the same for $125,000, nor that appellant had a secret agreement with McBride whereby the latter was to pay appellant the difference between $125,-000 and $160,000 on his closing the sale; that upon the consummation of the sale, McBride paid to appellant for his own use and benefit, out of the consideration so paid by the syndicate, the sum of $35,000, and of which payment the plaintiffs and their associates had no knowledge nor did they know of such secret agreement until about January 1, 1916; that the real estate so purchased was to be handled, superintended and resold by appellant agreeable to a certain contract entered into between the members of the syndicate and appellant, wherein it was agreed that after the return to these

members of a certain agreed sum of money, the remainder, whether in money or real estate, should be and become the property of appellant as and for his commission and compensation for his services in the purchase and his other activities in and concerning the entire matter; that appellant, in furtherance of his agreement with the syndicate, caused the real estate to be conveyed to a trust company of his selection in trust for plaintiffs and any others interested therein, which deed recited the consideration as $160,000.

The prayer of this complaint is not for damages in gross, but each plaintiff demanded a judgment against appellant for a definite. and fixed sum of money

1.   as his proportionate share of the alleged secret profit.  Appellant directs our attention to the several demands thus made by the plaintiffs as showing want of community of interest in the relief sought, and hence he insists there was a misjoinder of parties plaintiff.  Answering this contention we may say that the theory of a pleading is controlled by its leading allegations, and the prayer is merely advisory.  *Phillips v. Gammon* (1919), 188 Ind. 497, 124 N. E. 699; *Muncie, etc., Trac. Co. v. Citizens' Gas, etc., Co.* (1912), 179 Ind. 322, 329, 100 N. E. 65; *Crawfordsville Trust Co. v. Ramsey* (1912), 178 Ind. 258, 275, 98 N. E. 177; *Goecker v. McOsker* (1912), 177 Ind. 607, 615, 98 N. E. 724; *Barnum v. Rallihan* (1916), 63 Ind. App. 349, 361, 112 N. E. 561.

This was not an action to avoid the McBride land purchase or to recover the money paid by complainants and used for that purpose.  It was, however, an

2.   action to recover damages by reason of fraud and deceit practiced by appellant to the injury of appellees.  Looking to the merits of this case, it will be observed that our Civil Code, §263 Burns 1914, §262 R. S. 1881, provides that: "All persons having an inter-

est in the subject of the action, and in obtaining the relief demanded, shall be joined as plaintiffs, except as otherwise provided in this act," and §270 Burns 1914, §269 R. S. 1881: "Of the parties in the action, those who are united in interest must be joined as plaintiffs or defendants; but, if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint." These Code provisions are important in the consideration of the questions here presented, for they not only re-enact the equity rule for the joinder of parties and confirm a large portion of the common-law rules, but they "look to a more free union of parties as plaintiffs in the same action than was allowed by the courts of law under the former system." Pomeroy, Code Remedies (4th ed.) §115. Hence, the equitable doctrine has been broadened in order that all rights and the pursuit of all remedies, whether legal or equitable, between the parties in interest may be finally determined in one civil action. *Field* v. *Holzman* (1884), 93 Ind. 205, 209; *Lake Erie, etc., R. Co.* v. *Hobbs* (1907), 40 Ind. App. 511, 517, 81 N. E. 90; *Continental Ins. Co.* v. *Bair* (1917), 65 Ind. App. 502, 511, 114 N. E. 763, 116 N. E. 752; Pomeroy, Code Remedies (4th ed.) §§113, 117.

Mr. Pomeroy, after a careful study of legislation as to the unity of plaintiffs in legal and equitable actions (Pomeroy, Code Remedies (4th ed.) §117) says: "Persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs in all actions, whatever be their nature, although the rights of such persons are *legally* several, and although at the comman law they would be required to institute separate actions; or, in other words, the plain import of the legislation—its language not being confined to any class of suits—is to enlarge the number of

cases in which persons may be joined as co-plaintiffs, and to place legal actions in this respect upon exactly the same footing as those which are equitable in their nature."

The rule for the joinder of plaintiffs in this jurisdiction briefly stated, requires that all who unite as plaintiffs must have a common interest in the subject-matter of the action and each must be interested in the relief of the other, but equality of interest, or that such interest may not be legally severable, is not essential. *Troxel* v. *Thomas* (1900), 155 Ind. 519, 521, 58 N. E. 725; *Home Ins. Co.* v. *Gilman, Exr.* (1887), 112 Ind. 7, 13 N. E. 118; *Elliott* v. *Pontius* (1894), 136 Ind. 641, 35 N. E. 562, 36 N. E. 421; *Armstrong* v. *Dunn* (1896), 143 Ind. 433, 41 N. E. 540; *Martin, Trustee,* v. *Davis* (1882), 82 Ind. 38; *McIntosh* v. *Zaring* (1898), 150 Ind. 301, 49 N. E. 164; *Continental Ins. Co.* v. *Bair, supra;* Pomeroy, Code Remedies (4th ed.) §§115, 116.

In this connection it may be noted that we are not unmindful of the rule that a complaint by several plaintiffs must state a cause of action in favor of all, 3. or it will be insufficient as against a demurrer for want of facts. *Brunson* v. *Henry* (1894), 140 Ind. 455, 39 N. E. 256; *Frankel* v. *Garrard* (1903), 160 Ind. 209, 66 N. E. 687; *Elliott* v. *Pontius, supra; Knepper* v. *Eggiman* (1912), 177 Ind. 56, 60, 97 N. E. 161; *Prudential Ins. Co.* v. *Diffenbaugh, Admr.* (1918), 68 Ind. App. 699, 121 N. E. 301. While these rules are general and may be said to be elementary, yet they are basic principles in the decision of the questions here presented.

Appellant originated the syndicate scheme. He induced appellees to subscribe money to a common fund for the purpose of purchasing the McBride land 4, 5. as a joint investment. In that respect, appellees and their associates acted jointly and not sepa-

rately. The land was bought by the syndicate under the direction and supervision of appellant as its agent. In this matter he acted for them jointly, and not for each of them separately, but in handling the transaction he knowingly concealed from the members of the syndicate certain material facts, and by certain fraudulent representations, and through McBride as a medium, he fraudulently received $35,000, money of the syndicate in excess of what was actually paid for the land.

It appears that the alleged financial injury to appellees was brought about by the fraud of appellant, alike applicable to all of the members of the syndicate. It was consummated on all of them at the same time and by the same means. Under the facts as disclosed by the complaint, appellant was interested in the success of the enterprise of which he was the originator, and on whom all were relying for a successful conclusion. Hence, we may say that all of the parties to the land venture were more or less engaged in a common enterprise, and each was bound to act in the utmost good faith toward the other. Consequently, speaking of appellant, in the light of the alleged facts, good faith required that he acquaint his associates or those he represented with all the facts known to him and connected with the entire transaction. It appears that he failed in this particular and that he knew the members of the syndicate were ignorant of facts by reason of which he would secretly acquire as his own a substantial profit out of the syndicate fund. Furthermore, it is shown that the McBride conveyance was made subject to a mortgage of $60,000, and that $20,000 toward the payment of the balance of the purchase money was advanced by a certain trust company upon its receiving the title as trustee.

As further tending to show the relation of the parties generally and to the common fund, it may be noted that

they were not separately recognized in the land purchase.   The title to the land as directed by appellant was vested in a trustee for the benefit of all interested parties.   In this manner of handling the title, the money, other than the syndicate fund, necessary to pay the falsely represented purchase price of $160,000 was raised.   It may be conceded that the contributors to that fund made unequal payments, that they were not equally interested, and that their interests were legally severable.   If these facts be conceded, then appellant insists that the complainants could not be interested in the judgment of each other, and for that reason there is no community of interest in the relief sought.   In this contention appellant is in error.   It is certainly of no concern to appellant whether appellees and their associates paid their subscriptions to one of their number as treasurer, and by him paid to appellant, or that the payments were made by the individual members to either appellant or to McBride direct.   In any event, the money was a common fund in the hands of appellant, or in the hands of McBride through the efforts and direction of appellant as a representative of the sydicate, for a specific use in accordance with their joint agreement.   Appellant, in support of his position, relies on *McIntosh* v. *Zaring, supra,* wherein it is held that when community of interest is in both the subject of the action and in the relief demanded, joinder is permitted.

As appellant relies largely on the McIntosh case, it may be well to here notice it.   That was an action by two of three firms of attorneys employed to represent a party in an action to contest a will.   The contract of employment was in writing wherein it was stipulated that upon a compromise before trial the contestor would pay the attorneys twelve and one-half per cent. of the amount received by him in settlement.   The contract expressly provided that one-third of such fee should

be paid to each of the three firms of attorneys. The case was compromised. The fee of the attorneys, by reason of the false representations of their client, was settled at a much less sum than was actually due under the contract. It was held, (page 305) "That the contract sued on did not create a joint right of action in all the plaintiffs and hence the legal effect of the written contract was the same as if there had been three several and separate written contracts in favor of each of the three several firms or groups of attorneys." It will be noticed that the promise to pay was to the attorneys severally. However, it was also held that the element of fraud, in the establishment of which they were all interested, was aside from the written contract and sufficient to authorize a joint action thereon. While in the case at bar there is no settlement growing out of a contract to be set aside, as in the McIntosh case, yet it appears that appellant obtained out of the joint fund a specified sum of money through fraud. Complainants show a contract on account of which a joint fund was created, but the fraudulent manner in which it was depleted was an element outside of the contract, and in the establishment of which they were all equally interested; for, unless the charge of fraud was sustained, no recovery could be had by any one.

Appellant's false statements as to value, and his false statements as to the price for which the land could be purchased, and upon which the contributors to the fund relied and acted, together with his secret agreement with McBride, had the effect to increase the debt against the land in the sum of $35,000. This fraudulently increased debt, it is needless to say, materially concerned the owners of the equity in the land, whose interests were not in severalty but determinable, perhaps, only from a consideration of evidence bearing upon that sub-

ject.   Obviously, in this case, the damages to be award-
ed for fraud must be common to all of those whose in-
terests are thereby affected, and for that reason it is
essentially necessary that the court have all the parties
to the transaction before it.   This requirement cannot
injure appellant, as he would have no interest in ap-
portioning the damages between the claimants.  *Larsen*
v. *Groeschel* (1884), 98 Ind. 160; *Young* v. *Board*
(1865), 25 Ind. 295, 299; *Shira* v. *State, ex rel.* (1918),
187 Ind. 441, 119 N. E. 833; *Humbird* v. *Davis* (1904),
210 Pa. St. 311, 59 Atl. 1082.

As applied to the cross-complainants, appellant makes
the point that neither of these complaints show a joint
right arising out of either a partnership relation
or out of some contract expressed or implied.  He

6.   insists, however, if either relation be shown, the
law vests the right of action exclusively in the surviv-
ing partner or joint contractor.   Hence, upon the death
of McGowan and Dillman, the right of action as to them
was exclusively in the survivors.   Starting with these
premises, appellant reasons to a conclusion that the
cross-complainants, Kate F. McGowan and Sarah G.
Dillman, are not proper parties in this action and they
are improperly joined as cross-complainants herein,
citing among other cases, *McIntosh* v. *Zaring, supra;*
*Needham* v. *Wright* (1895), 140 Ind. 190, 39 N. E. 510;
*Indiana, etc., R. Co.* v. *Adamson* (1888), 114 Ind. 282,
15 N. E. 5.   True, these cases hold that the property
of a partnership goes to the survivors pending settle-
ment, and in case of a joint contract the whole right—
the unified interest—vests in the survivors.   Hence, all
actions involving partnership property, and actions to
enforce joint contracts, must be brought in the names
of the survivors.   Pomeroy, Code Remedies (4th ed.)
§143.   In the instant case there was no partnership re-
lation or any attempt to enforce a joint contract.   Con-

sequently, the principles which govern either of such class of cases do not apply to a case, as here, where in the light of the alleged facts confidence reposed was betrayed.

Both of cross-complainants' decedents were members of the syndicate and died testate. Hugh McGowan left his entire estate to his widow, Kate F. McGowan, cross-complainant, as legatee and trustee, and under the will of William H. Dillman it appears that Sarah G. Dillman, the other cross-complainant, was his sole devisee and heir at law. While it is true that neither of these cross-complainants personally contributed to the common fund, nor were they members of the original syndicate, yet it is shown that their respective decedents, at the time of their death, were members of the syndicate by reason of having furnished money thereto for the purpose of buying the McBride land; that by virtue of the respective wills aforesaid, cross-complainants succeeded to all of the rights and interests of their respective decedents, under the syndicate agreement as well as in their decedents' equity in the land. Such was the relation of the cross-complainants with reference to all other equity owners of the land and to appellant at the time this action was commenced. We thus conclude that they were parties in interest and necessary parties in the determination of plaintiffs'. alleged damages. These cross-complainants, on being made parties defendant, each filed a separate cross-complaint, the sufficiency of which, to state a cause of action, we considered in connection with the complaint. We therefore conclude that the demurrers to the complaint and cross-complaints were properly overruled.

Appellant, in support of his motion for a new trial, insists that the unconflicting evidence shows that if complainants had any right of action it was several and not joint. From the statements of counsel, it would seem

that the evidence without dispute tends to support each material allegation of the several complaints, except it is contended by appellant that there was no evidence tending to show the formation of a syndicate or association for the purpose of buying the McBride land; that the subscriptions for that purpose were obtained by appellant; that they were not all made upon the same terms and conditions, and each of the subscribers made the best possible arrangement for himself and without knowing the nature and terms of the subscriptions made by any other of his associates. The evidence does show that appellant gave certain of the subscribers an advantage not enjoyed by others. The circumstances under which these advantages were offered and accepted may or may not be sufficient to show bad faith as between the contributors. In any event, if there was reprehensible conduct on the part of one or more of the contributors toward the others, appellant, although an active party in each instance, was not concerned as to the effect of such conduct between them. In other words, he will not be permitted to use the faults of others as a shield against his own wrong.

As to the formation of the so-called syndicate, the evidence shows that the land deal was not closed until the various subscriptions were collected into one aggregate amount and then used as a cash payment in closing the transaction. Each of the contributors knew of the other's participation in raising the aggregate fund, the purpose thereof, and the manner in which it was to be handled, as explained to each of them by appellant. One of the contributors accompanied appellant to Cleveland, Ohio, where the last act towards securing the necessary amount of cash was completed, which cash was, by appellant or at his direction, turned over to McBride. While it does not directly appear that the contributors actually met together and formed an or-

Federal Life Ins. Co. *v.* Frazer—192 Ind. 565.

ganization, yet we think the evidence sufficient to show that in reality there was an association of these contributors formed by appellant for the purpose of carrying out a particular business transaction of a financial character in which the contributors were mutually interested and represented by appellant. We regard the evidence as sufficient to warrant the jury in finding that the contributors to the land purchase fund had a common purpose and a common interest, which might properly be designated by the word "syndicate." 37 Cyc p. 661.

Many pages of the briefs of counsel pertain to the evidence relative to the allegations in the complaint that appellant concealed from appellees the facts upon which this cause of action rests, and appellant's answer averring that appellees' cause of action did not accrue within six years before the commencement thereof. We have examined carefully the evidence pertinent to the question thus discussed, and from which we conclude that there was evidence before the jury from which it might have drawn inferences justifying it in finding the concealment allegation as true and the averments in the answer as untrue.

The alleged errors pointed out in this case will not justify us in reversing the judgment.

Judgment affirmed.

Ewbank, J., not participating.