SCHNEWIND *v.* HACKET, ADMINISTRATOR, ET AL

PRACTICE.—*Appeal to Supreme Court.*—*Record.*—A motion for a new trial is properly a part of the record on appeal to the supreme court, without being made so by a bill of exceptions.

ALTERATION OF WRITTEN INSTRUMENT.—*Promissory Note.*—The alteration of a promissory note, by the direction of one of several joint makers thereof, by increasing the rate of interest therein, without the consent of the other makers, discharges the latter from all liability thereon.

SAME.—*Authority of a Joint Maker.*—The fact that one of several joint makers of a complete written instrument for the payment of money, is intrusted with it by the others, after they have signed it, to deliver it to the payee thereof, does not authorize such maker to add thereto anything increasing the liability of such makers.

SAME.—*Void in Part, Void in All.*—Where, by the act of the payee and one of several joint makers of a written instrument for the payment of money, a material alteration therein has been made, without the consent of the other makers, such instrument can not be held void as to the part inserted and valid as to the original, but is entirely void.

From the Porter Circuit Court.

*T. J. Merrifield* and *W. Johnston*, for appellant.

*A. L. Jones* and *W. J. Bozarth*, for appellees.

HOWK, J.—Appellant, as payee, sued the appellees in the court below, on a promissory note, alleged to have been executed by the decedent, Oliver Johnson, in his lifetime, and the appellee Daniel P. Ingraham, of which note the following is a copy:

"$500.00.          VALPARAISO, November 11th, 1872.

" Thirty days after date, we promise to pay to the order of Henry Schnewind five hundred dollars, together with all attorney's fees and other costs and charges for the col-

lection thereof, if the same is not paid when due, all without relief from valuation laws, for value received, with interest at ten per cent.       (Signed)

"OLIVER JOHNSON.

"DANIEL P. INGRAHAM."

Appellant's complaint was in five paragraphs. Appellee Ingraham moved the court below to strike out part of the second paragraph of the complaint, which motion was sustained, and to this decision appellant excepted. Appellee Ingraham demurred to the fifth paragraph of the complaint, for the want of sufficient facts in said fifth paragraph to constitute a cause of action, which demurrer was sustained by the court below, and to this decision appellant excepted. And appellee Ingraham then answered in four paragraphs, as follows:

1. In answer to the first paragraph of the complaint, he said that he did not execute the note in said paragraph mentioned.

2. In answer to the second paragraph of the complaint, he said that he did not execute the note in said paragraph mentioned.

3. In answer to the whole complaint, he alleged, in substance, that on the 11th day of November, 1872, the said Oliver Johnson and the appellee Ingraham executed a note to the appellant, setting it out, and the note thus set out was the same as the note described in appellant's complaint, except that it did not contain the words and figures following, "*at* ten *per cent.*," which were in the note sued on; that said note was given for money borrowed by said Johnson of the appellant, and said Johnson was principal in said note, and appellee Ingraham was the surety of said Johnson on said note, all of which appellant well knew; that said note was partly written and partly printed, an ordinary printed blank note being used for the purpose; that all of the blanks were properly filled, and that there were no blank spaces left in said note; that the word "*interest*" was printed in said note,

and immediately after said word "*interest*" there was a period, denoting the end of the sentence; that after appellee Ingraham had so signed said note, as surety for said Johnson, the appellant and said Johnson, in the absence of appellee Ingraham and without his knowledge or consent, made a material alteration of said note, by inserting therein after the word "*interest*" the words "*at ten per cent.*," whereby the rate of interest on said note became and was changed from six per cent. per annum to ten per cent. per annum; that after the making of such alteration, the said Johnson, without the knowledge or consent of appellee Ingraham, paid appellant interest on said note at the rate of ten per cent. per annum, from the 11th day of November, 1872, to the 11th day of November, 1873; that since the payment of such interest the said Johnson had died; and that the note, so signed by appellee Ingraham, as surety for said Johnson, and which was so altered by appellant and said Johnson, was the same note mentioned and set out in each paragraph of appellant's complaint.

4. In answer further to the third and fourth paragraphs of appellant's complaint, appellee Ingraham said that he denied each and every allegation in said paragraphs contained.

The first and second paragraphs of said answer were duly verified, by the affidavit of appellee Ingraham.

To the third paragraph of said answer, appellant replied by a general denial of each and every allegation therein.

And the action being at issue was tried by the court below, without a jury, which resulted in a finding for appellant against the estate of Oliver Johnson, deceased, in the sum of five hundred and fifty-six dollars and seventy-five cents, and in a finding for the appellee Daniel P. Ingraham. And thereupon, appellant moved the court below, upon written causes filed, for a new trial, which

motion was overruled, and to this decision appellant excepted, and judgment was rendered upon the finding.

Appellant has assigned in this court the following alleged errors:

1. Error of the court below, in sustaining the motion of the appellee Daniel P. Ingraham to strike out part of the second paragraph of the appellant's complaint.

2. Error of the court below, in sustaining the demurrer of appellee Daniel P. Ingraham to the fifth paragraph of appellant's complaint.

3. Error of the court below, in overruling appellant's motion for a new trial.

In the argument of this cause, appellant's attorneys say, that " as the matter struck out of the second paragraph was contained in the third and also in the fourth, which were allowed to stand intact, the error, if any," (in sustaining the motion to strike out,) "would probably be unavailable, and we forbear to insist upon it. And as the ruling upon the demurrer to the fifth paragraph involves similar considerations, we will only urge the third ground of error, namely, the overruling of the motion for a new trial."

Thus curtly, appellant's own counsel have disposed of the first and second of his alleged errors, and have kindly limited our inquiry and decision, in this action, to the third and last alleged error. In appellant's motion for a new trial, in the court below, the only cause assigned by him for such new trial was this: that the finding and decision of the court were not sustained by the evidence, and were contrary to law.

A bill of exceptions, containing the evidence on the trial, is properly in the record. This evidence was the note sued upon, and the testimony of the appellant and of the appellee Daniel P. Ingraham, and that was all the evidence on the trial.

The note offered in evidence was partly printed and partly written. The printed matter in the note closed

with the words "*with interest*," followed by a full period, in punctuation, and after this period were these written words and figures, "*at ten per cent.*"

Appellant testified, in substance, that the note was given for borrowed money; that said Oliver Johnson negotiated the loan of the money and the money was paid to him; that it was agreed between said Johnson and appellant, before the execution of said note, that the loan should draw interest at the rate of ten per cent. per annum; that said Johnson, when negotiating the loan, told the appellant that the money was to be used by himself and appellee Ingraham, jointly, in shipping lumber; that appellant never knew that Ingraham was or claimed to be surety, only, on said note, until September, 1874; that when said Johnson brought the note to appellant for the money, it was signed by said Johnson and said Ingraham; that after the money was counted to be paid to said Johnson, but before its delivery, appellant discovered that no time or rate of interest were specified in the note; that said Johnson then told appellant to insert the word "*days*" in the proper blank space for the time of said note, and also the words "*at ten per cent.*" after the word "*interest*" in said note; that he, Johnson, had told Ingraham, when Ingraham signed the note, that it was to draw interest at ten per cent., and Ingraham had assented thereto; that at said Johnson's request, appellant then inserted the word "*days*" and the words "*at ten per cent.*" in said note, and accepted the same and delivered the money to said Johnson; that appellant believed what said Johnson had told him as to Ingraham's knowledge that the note was to draw ten per cent. interest and relied upon it; that he first learned that Ingraham claimed that the note had been altered without his consent, in September, 1874; that in July or August, 1874, after Johnson's death, he met Ingraham on the sidewalk, on the west side of the court-house square, in Valparaiso, and had a conversation with him about the note; that Ingraham said,

"you hold a note against me, I believe;" I said, "if your name is Ingraham, I do;" he said, "I remember signing a note that draws ten per cent. interest;" and I said, "yes, sir, that is the very note."

We have set out appellant's testimony in chief at length, because it gives his side of this case in its strongest and most favorable light for him. It appears from this testimony, that after the execution of the note in suit by the appellee Ingraham, in his absence, and, so far as appellant actually knew, without his authority, knowledge or consent, the appellant altered the note by adding words thereto, which largely increased the rate of interest mentioned in the note at the time Ingraham executed it, and thus made another contract, more burthensome than the original note.

The substance of Ingraham's testimony was, that he signed the note in suit at the request of Oliver Johnson and as his surety; that he had no interest in the note, and received none of the money for which it was given; that when he signed the note, the words "*at ten per cent.,*" which now appear in it, were not there; that Johnson never told him the note was to draw ten per cent. interest, and he had no knowlege that it was to draw interest otherwise than as expressed upon its face as it was when he signed it; that Johnson asked him to sign as surety for him, Johnson, and he, Ingraham, consented to do so; that Johnson told him the note was for borrowed money and was to run thirty days; that he never authorized Johnson nor any other person to make any alteration of the note after he had signed it, and he had no knowledge that any such alteration had been made, until during the September term, 1874, of the court below, when he saw the note for the first time since he signed it; that he had asked appellant, two or three times, to let him see the note, before that time, but he, appellant, always said that he did not have it with him; that he, Ingraham, remembered the conversation testified to by appellant as having taken

place on the west side of the court-house square, but he did not tell appellant in that or any other conversation, that the note drew interest at the rate of ten per cent., or ten per cent. interest; there was nothing said in that conversation about the rate of interest the note drew; that, at the time of that conversation, he did not know that the note had been altered, and had no reason to suppose that the note drew interest at any greater rate than six per cent.; that the words " *at ten per cent.*" were not put in the note with his knowledge or consent; that he read the note before he signed it; that when the note became due, or shortly afterwards, Johnson told him that he had taken up the note, and he, Ingraham, supposed that such was the case, until some time after Johnson's death, when he learned through John Taylor and Selts that appellant still held the note; that the next time he saw appellant, he spoke to appellant about the note, and asked appellant to let him see the note, and appellant said he didn't have the note with him; that was the conversation, spoken of as having taken place on the west side of the court-house square.

Before considering the questions presented by appellant upon the evidence, we ought, perhaps, to notice an objection made by the appellee Ingraham to the record of this cause. On his behalf, it is insisted that appellant's motion for a new trial was not properly in the record, because the motion was not embodied in or made a part of the bill of exceptions. This point is not well taken. "A motion for a new trial is properly a part of the record without being made so by a bill of exceptions." Buskirk's Practice, 254; *Hopkins* v. *The Greensburg, etc., Turnpike Co.*, 46 Ind. 187.

We will now examine the positions of appellant's learned attorneys, in their discussion of this case. The note in suit, upon its face, was the joint note of Oliver Johnson and Daniel P. Ingraham. Appellant testified that although his negotiation for the loan of the money upon

Schnewind *v.* Hacket, Administrator, *et al.*

the note was with Johnson alone, yet that Johnson told him, at the time, that the money was to be used by Johnson and Ingraham, jointly, in shipping lumber; and that he, appellant, never knew that Ingraham was or claimed to be surety, only, on said note, until in September, 1874. Appellant also testified, that when Johnson brought him the note to get the money on it, before the delivery of the money he discovered that no time or rate of interest were specified in the note, and that Johnson then told him to insert the word "days" in the proper place for the time, and the words "at ten per cent.," after the word "interest" in said note; that Johnson also told him, that he had told Ingraham, when the latter signed the note, that it was to draw interest at ten per cent., and that Ingraham had assented thereto, and that be believed and relied upon what Johnson had told him, and altered the note as Johnson had requested him to.

Upon this testimony of the appellant, and the evidence afforded by the face of the note, completely ignoring the testimony of the appellee Ingraham, appellant's counsel have predicated their entire argument. Assuming from this testimony and evidence, that, as between the appellant and appellee Ingraham, the note in suit was the joint contract of Johnson and Ingraham, their first proposition is this; that Ingraham is bound by the act of Johnson in directing the alteration of the note in suit by appellant, on the ground that the act or admission of one joint contractor binds the other. This position is fortified by the citation of a number of authorities, most of which are early Massachusetts decisions, and none of which are directly applicable to the case at bar. The case of *Fay* v. *Smith*, 1 Allen, 477, was decided in 1861 by the supreme court of Massachusetts, some time subsequent to the decisions of that court cited by appellant, and has the merit of being directly in point. In that case, "the defendant, not being named as a party to the note in suit, placed his name upon the back of it, before it was deliv-

ered by the promisor, Reed, to the payee, and thereby, according to the settled law of Massachusetts, made himself jointly liable as an original promisor. The note, when he thus placed his name upon it, was not payable with interest; but the other promisor had agreed with the payee to give him a note bearing interest, and the words 'with interest' were added by the procurement of the payee, and with the assent of Reed, but without the knowledge or authority of the defendant; and with this alteration the note was taken by the payee and indorsed to the plaintiffs." From this statement of the case cited, it will be seen that it was very similar to the case now under consideration. It was a case where, as in this case, the alteration in the note in suit was made by the procurement of the payee, and with the assent of one but without the knowledge or consent of the other of two persons, who were both liable on the note as original joint makers. But, in the case cited, it was held by the supreme court of Massachusetts, that the alteration of the note, by the addition of the words "with interest," avoided the note as to such promisors as did not consent thereto, although the alteration was made without fraudulent intent. That court said, "there seems to be no difference in principle between this case and one where a note should be signed by two persons for the sum of three hundred dollars, and one of them, supposing he had authority from the other, but really without his consent, should strike out the words 'three hundred dollars,' and insert in their place 'five hundred dollars,' and then negotiate the note. The other signer would be wholly discharged, not on the ground of fraud and forgery, but of want of authority to bind him. The note used he did not execute; the note which he executed was never used, but was destroyed by the alteration, and another substituted for it." In our opinion, that is both good law and good sense, and it harmonizes well with the law of this state, as enunciated in numerous decisions of this court.

We hold, therefore, that the first proposition of appellant's counsel, in so far as they attempt to apply it to the case at bar, is untenable and is not the law of this state.

The second proposition of appellant's attorneys is this; the appellee Ingraham was bound by the alteration of the note in suit, because, by intrusting the note to Johnson, he clothed him, Johnson, with an apparent authority, at least, to act for him, Ingraham, and the case is therefore one for the application of the maxim, that where one of two innocent parties must suffer from the act of a third party, the loss ought to fall on him by whom the third party was enabled to commit the injury. This proposition, in our opinion, is not applicable to this case, and if it was, it is not correct. Ingraham executed a note that was complete and perfect in all its parts. It was for a sum certain, and in legal acceptation it had a fixed and certain rate of interest. There were no blanks in the note to be filled, and it closed with a period or full stop, thereby indicating the end of the note, and that there was nothing required or necessary to complete the contract. In such a case, it will not do to say that Ingraham, by simply intrusting the note to Johnson for negotiation, clothed him with even an apparent authority to make any alteration in the body of the note, or to add any words thereto. Johnson had no such apparent or implied authority, and it clearly appears from the other evidence in the record that he had no express authority. Where one signs or indorses a blank note and delivers the same to another, it may be true that he thereby clothes the person to whom it was delivered with an apparent authority to so fill up the blanks as to make it a complete note, and that he will be bound by the note when the blanks are thus filled. But, even in such a case, the party to whom such a blank note, so signed or indorsed, may be delivered, has no apparent or implied authority to do aught more than to fill the blanks, and thus make the

blank note a complete note. He may not, under this apparent or implied authority, add any clause or stipulation to the note, beyond what the blanks therein provide and call for, and if any such addition should be made to the note, such note, as to the party signing or indorsing the same in blank, would be absolutely void. It was so held by this court, in the well considered case of *Holland* v. *Hatch*, 11 Ind. 497. In that case, Holland had been in the habit of signing his name, sometimes as drawer and sometimes as indorser, upon blank printed bills of exchange, and leaving them with the firm of Tyner & Childers, thus signed by him, to be filled up and used by them as their business might require. These printed blank bills contained no waiver of the valuation laws. Two of the printed blank bills, one signed by Holland as drawer and the other indorsed by him, were filled up as to the blanks therein, and to each of them was added a written waiver of the valuation laws, and they were then negotiated. Default was made in their payment, and suit was brought for their collection, in the Franklin circuit court of this state. Holland answered, denying under oath his execution of the bills in suit, and relied upon the facts above stated to sustain his answer. Upon appeal, it was held by this court, that the foregoing facts sustained Holland's answer, and that the insertion of the clause waiving valuation laws in the bills, without the authority or consent of Holland, rendered both bills, as to him, absolutely void. WORDEN, J., who wrote the opinion of the court, said, "the authorities, probably, will sustain the position that, in such case, any and all blanks may be filled which are necessary and proper to make the instrument a perfect and complete bill of exchange or promissory note, as the case may be; but we know of none which would sustain the position that simply signing and delivering such blank paper would authorize the insertion of a clause wholly unnecessary to make the paper perfect and complete as an ordinary note or bill."

But it is unnecessary to pursue this proposition any further. It is clear to our minds, that this is not one of the cases to which the maxim cited by appellant's attorneys in their second proposition can be made applicable. It is rather a case in which the appellant should bear, without a murmur, the consequences of his own carelessness, negligence or folly, in altering a complete and perfect note by adding words thereto which materially changed the contract, in the absence and, so far as he knew, without the authority or consent, of one of its makers.

The third and last proposition of appellant's counsel, in their argument of this cause, is this: Ingraham, if not bound by the note as it is, is bound by it as it was before alteration, on the ground that the alteration was innocent on the part of appellant, that it has not affected the rights of Ingraham, and that it was procured by the fraud of Johnson. And it is said by appellant's attorneys, in support of this proposition, that, under such circumstances, appellant has a right to treat this alteration as a nullity, and to have the contract restored to its original condition, and enforced. Counsel cite two Pennsylvania decisions, and the text of 2 Parsons Notes and Bills, 570, founded on those decisions, in support of their position. But such is not the law in this state. In the case last cited from our own Reports, of *Holland* v. *Hatch, supra,* it was insisted, that if there was no authority to insert the waiver of the valuation laws, in the bills sued on, then the insertion of such waiver was a mere excess of authority, and would not vitiate the bills, and that they might be treated as if this clause had not been inserted. But this court held, and we think correctly, that, in such a case, the court is not authorized to hold the bills void, so far as the clause inserted without authority is concerned, and valid as to the remainder; and it was said, that "it is abundantly settled, that a material alteration in a note or bill,

avoids it as to previous parties not consenting to the alteration."

Ingraham may well say, it seems to us, in the language of Mr. Justice Hoar, in the Massachusetts case before cited, of *Fay* v. *Smith, supra,* of the note held by appellant: "the note used he did not execute; the note which he executed was never used, but was destroyed by the alteration, and another substituted for it." But if the note executed by Ingraham was destroyed, as to him, by appellant's alteration of it,—can the note so destroyed be restored and vitalized as to Ingraham, without his consent, by any act of the appellant? We think not.

In our opinion, the court below committed no error in overruling appellant's motion for a new trial, and the decision and judgment of that court, in this cause, were eminently just and right.

The judgment of the court below is affirmed, at appellant's costs.