Kenneth W. ESKEW, individually and as Trustee of the Kenneth W. Eskew Trust, Thomas J. McAllister, Trustee of the Theodore F. Schlaegel, Jr. Trust, and Eugene P. Cornett individually and as Trustee of the Eugene P. Cornett Trust, Appellants–Plaintiffs,

v.

Adaline M. CORNETT, Appellee–Defendant.

No. 49A02–0006–CV–411.

Court of Appeals of Indiana.

Feb. 26, 2001.

Rehearing Denied April 30, 2001.

Alan H. Lobley, Indianapolis, IN, Attorney for Appellants.

Sue Figert Meyer, R. Brock Jordan, Rubin & Levin, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Kenneth W. Eskew, individually and as Trustee of the Kenneth W. Eskew Trust, Thomas J. McAllister, Trustee of the Theodore F. Schlaegel, Jr. Trust, and Eugene P. Cornett, individually and as Trustee of the Eugene P. Cornett Trust (collectively "Eskew") appeal the trial court's grant of judgment on the pleadings on their claim against Adaline M. Cornett ("Cornett"), contending that the allegations of his complaint are sufficient to establish a valid claim for relief.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In the 1970s, several individuals entered into joint ventures to purchase and develop real estate. Eugene Cornett, Adaline Cornett, Kenneth Eskew, and Betty L. Eskew entered into a joint venture to purchase a parcel of property. The joint venture outlined the division of potential proceeds. The Cornetts also entered a joint venture agreement with Theodore F. Schlaegel to develop the property and divide the proceeds.

In 1994, R.N. Thompson & Associates, Inc. ("RNTA") contracted to purchase the property from all of the interest holders. The purchase agreement provided that "Purchaser, at Purchaser's option, may acquire Adaline M. Cornett's interest in the real estate by separate documents without such acquisition being a violation of the memorandum (memo) of joint venture agreement." Record at 17.

RNTA entered into a separate agreement with Cornett to acquire her interest for a considerable sum beyond what she would have received under the first purchase agreement. The agreement stated that "additional consideration is appropriate for Adaline to relinquish her interest in these parcels including transfer of Adaline's attendant right to insist on a unanimous vote [to transfer the property.]" Record at 101.

After Eskew learned of the RNTA Cornett agreement, he brought suit against Cornett for breach of the purchase agreement, breach of fiduciary duty, and conversion. The trial court granted Cornett's motion for judgment on the pleadings. Eskew now appeals.

### DISCUSSION AND DECISION

■ Eskew contends that the trial court erred in granting Cornett's motion for judgment on the pleadings. A motion for judgment on the pleadings pursuant to Ind. Trial Rule 12(C) attacks the legal sufficiency of the pleadings. *Rivera ex rel. Rivera v. City of Nappanee*, 704 N.E.2d 131, 132 (Ind.Ct.App.1998), *trans. denied* (1999). A judgment on the pleadings is proper only when there are no genuine issues of material fact and when the facts shown by the pleadings clearly establish that the non-moving party cannot in any way succeed under the facts and allegations therein. *Bledsoe v. Fleming*, 712 N.E.2d 1067, 1069–70 (Ind.Ct.App.1999).

■ In reviewing a trial court's decision on a motion for judgment on the pleadings pursuant to T.R. 12(C), this court conducts a de novo review. *Transcontinental Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1280 (Ind.Ct.App.1999); *Rivera*, 704 N.E.2d at 132. We look only to the pleadings in making this assessment. *Schuman v. Kobets*, 716 N.E.2d 355, 356 (Ind.1999).

■ We will accept as true the well-pleaded material facts alleged, and we will not affirm if there are any genuine issues of material fact. *Id.; Transcontinental Ins.*, 714 N.E.2d at 1280. The moving party is deemed to have admitted well-pleaded facts in favor of the nonmovant, and this court will draw all reasonable inferences in favor of the non-movant. *Transcontinental Ins.*, 714 N.E.2d at 1280;

*Rivera,* 704 N.E.2d at 132. We will affirm the trial court's grant of a T.R. 12(C) motion for judgment when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Transcontinental Ins.,* 714 N.E.2d at 1280.

■■■ At issue here is the construction of a contract. Since the trial rules require the pleader to attach to its complaint the written document upon which its action is premised, *see* T.R. 9.2(A), we may look to both the complaint and the attached contract for purposes of determining the appropriateness of the court's ruling on the motion for judgment on the pleadings. *Gregory & Appel, Inc. v. Duck,* 459 N.E.2d 46, 50–51 (Ind.Ct.App.1984). However, where allegations of a pleading are inconsistent with terms of a written contract attached as an exhibit, the terms of the contract, fairly construed, must prevail over an averment differing therefrom. *Id.* Furthermore, a moving party, for the purpose of the motion, concedes only the accuracy of the factual allegations in his adversary's pleadings; he does not admit assertions which constitute conclusions of law. *Id.*

■■■ Eskew claims that Cornett breached the contract. The construction of a written contract is a question of law. *Wildman v. National Fire & Marine Ins. Co.,* 703 N.E.2d 683, 685 (Ind.Ct.App. 1998), *trans. denied* (1999). When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Crawford County Community Sch. Corp. v. Enlow,* 734 N.E.2d 685, 690 (Ind.Ct.App.2000). This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 716 (Ind.Ct.App. 1999), *trans. denied.* When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument. *Id.* In such a situation, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Crawford County Community Sch.,* 734 N.E.2d at 690.

■■■ Here, the written purchase agreement specifically allows Cornett to sell her interest in the real estate by separate agreement without limitation as to the amount that she could demand for the sale of her interest. Cornett acted according to the express provision of the contract allowing her to negotiate and sell her interest separately without violating her joint venture agreement. Eskew received the portion due him under the purchase agreement. The pleadings disclose no cause of action under these facts.

■■■ Nonetheless, Eskew maintains that the purchase agreement set the price for the sale and the portion of each joint venturer's share of the price. It is true that the purchase agreement sets out the timing and amount of payment to each party. However, it also gives Cornett the right to sell her interest separately. When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.,* 721 N.E.2d 270, 280 n. 2 (Ind.Ct.App.1999). Here, while the provision sets forth the amounts each party would receive under the general formula, it also specifically gives Cornett the right to negotiate separately. Thus, that provision controls the general price provision.

■■■ Eskew also asserts that the separate sale provision in the purchase agreement applied only to the joint venture agreements and not to the financial provisions of the purchase agreement. However, the provision is not so limited by its express terms. The individual parties to a contract have a right to define their mutual rights and obligations. *Hunting-*

*ton Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 164 (Ind.Ct.App.1998). It is not within the province of this court to make a new contract for the parties or to ignore or eliminate any provisions in the instrument. *Id.* The parties defined their rights and obligations in the contract and did not limit Cornett's ability to sell her interest for a greater amount than she would have received under the purchase agreement. The trial court did not err in granting Cornett's motion for judgment on the pleadings on this claim.

 Eskew's complaint also contains a claim for breach of fiduciary duty based on the duty between joint venturers. Any fiduciary duty owed by Cornett to her co-joint venturers was limited by the terms of the contract which gave her the right to negotiate and sell her interest separately. Although Eskew asserts that the confidentiality clause in the RNTA–Cornett agreement evidences knowledge of wrongdoing, nothing in the joint venture agreement which specifically authorized Cornett to sell her interest separately precluded her from doing so confidentially or required disclosure of the terms of the separate transaction. The confidentiality clause in the contract is not evidence of guilty knowledge, nor under the allegations of the complaint is it a breach of a fiduciary obligation. Thus, the pleadings establish no viable claim for fiduciary duty.

 Finally, Eskew's complaint also alleges that Cornett committed criminal conversion. Eskew argues that Cornett was obligated to pay over the proportionate share of the proceeds of the RNTA–Cornett agreement to her co-joint venturers. In failing to do so, he alleges, Cornett converted their funds.

One commits conversion by knowingly or intentionally exerting unauthorized control over the property of another person. IC 35–43–4–3. The pleadings fail to demonstrate that Cornett exercised control over anyone else's property. The viability

of this claim is dependent upon a finding that Eskew was entitled to receive a benefit from the RNTA–Cornett agreement. However, we see no basis for such a finding. Cornett did no more than she was entitled to do under the original purchase agreement by striking her own bargain with RNTA. The trial court did not err in granting her motion for judgment on the pleadings.

Affirmed.

VAIDIK, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent and would hold that the trial court erred in granting judgment on the pleadings with regard to plaintiffs' claims for breach of contract and breach of fiduciary duty.[1]

The provision in the Contracts for Purchase of Real Estate that purchaser, at purchaser's option, "may acquire Adaline M. Cornett's interest in the real estate by separate documents without such acquisition being a violation of [the joint venture agreements]" (Record at 17) is held by the majority to have entitled Adaline not only to convey to the RNTA her interests in the various parcels separately from the conveyance of the interests of the other joint venturers, but in addition, to receive a sum over and above the amounts specified in the real estate contracts for "FINANCIALLY COVER[ING] THE AGGREGATE INTEREST OF ALL INTEREST HOLDERS IN THE REAL ESTATE WITH ALL TERMS, CONDITIONS AND REPRESENTATIONS TO BE APPLICABLE TO ALL THE JOINT VENTURERS UNDER THE [JOINT VENTURE AGREEMENTS]." Record at 17–18.

---

1. I agree with the conclusion of the majority that Adaline is not liable for criminal conver-

sion.

The majority concludes that the provision for separate acquisition was without limitation as to the amount which Adaline might demand and receive for sale of her separate interests. Op. at 977. The majority then makes what I deem to be an unwarranted leap to the conclusion that the absence of limitation confers upon RNTA and Adaline, respectively, the right to pay and receive an additional and secret purchase price over and above that contemplated and specified in the contracts of sale, *i.e.*, the "Base Agreements."

I am unable to read the Base Agreement provision for separate *acquisition* of Adaline's interests in the real estate to permit payment to her of a sum in contravention of the amount per acre set forth in the Base Agreements for acquisition of the "aggregate interest of all interest holders."[2]

While it may be true, as stated by the majority, that "Eskew received the portion due him under the purchase agreement" (Op. at 977), *i.e.*, the proportionate percentage called for by the joint venture agreements of the per acre purchase price specified in the Base Agreement, the fact remains that the amount set forth as the purchase price in the Base Agreements applies to *all* interest holders. Therefore, to clandestinely and under a binding obligation of non-disclosure, enter into a contract to pay one of the interest holders more than the amount specified in the Base Agreements is at odds with the Base Agreements themselves.[3]

With regard to the claim that Adaline breached the fiduciary duty owed to her other co-venturers, I would first note that such duty exists. A joint venture is akin to a partnership. *Mantooth v. Federal Land Bank of Louisville* (1988) Ind.App., 528 N.E.2d 1132, 1141, *trans. denied; Lafayette Bank & Trust Co. v. Price* (1982) Ind.App., 440 N.E.2d 759, 762. In such fiduciary relationships, each party owes to the others the duty of good faith and fair dealing. *Rice v. Strunk* (1996) Ind., 670 N.E.2d 1280, 1285 n. 3; *Lawlis v. Kightlinger & Gray* (1990) Ind.App., 562 N.E.2d 435, 442, *trans. denied.*

Apropos of the circumstances before us is the following description of the duty as set forth in 48A C.J.S., *Joint Ventures* § 24 (1981):

> "Since every member of a joint venture is regarded as the trustee or fiduciary of his coventurers, a joint venturer is strictly accountable to his coventurers for the subject matter of the common enterprise, and if he is recreant to his trust, a constructive trust in favor of the other parties will be created, and any rights which they may have been denied are recoverable. It is his duty to guard the rights of his coventurers equally with his own, and he is forbidden to deal with the subject matter of the enterprise for his own advantage. So, he may not, in promoting and carrying on the common enterprise, lawfully obtain for himself any secret or unfair advantage therefrom, especially where he is in control or possession of the joint property.
>
> So, too, a joint venturer may not enter into any secret agreements, and, if he does, his coventurers are entitled to relief, whether or not they are injured, and whether or not he in fact profited from the secret agreement. Without the consent of his associates, no member of a

---

2. Even if we were to read into the separate acquisition provision a right to receive an amount in excess of the contracted—for purchase price, such construction does not benefit Adaline because her interests in the real estate were not acquired by "separate documents." Her interests were acquired by the Contracts for Purchase of Real Estate, the Base Agreements. Accordingly, no right to additional consideration inures to her by virtue of the "separate documents" provision.

3. Adaline may not find refuge in paragraph (1A) of the Modification Agreement which purports to incorporate the secret agreement as to the additional purchase price, into the Base Agreements themselves. Clearly such incorporation without the consent and approval of the other parties to the Base Agreements is wholly invalid and ineffective. *Schnewind v. Hacket* (1876) 54 Ind. 248; 17A AM.JUR. 2d *Contracts* § 520 (1991).

joint venture may engage in any individual operations harmful to the business in which he and his associates are engaged, or so act that his personal interest is hostile to the interest of another member of the joint venture." (Footnotes omitted).

To the same effect is the discussion in 46 Am.Jur. 2d *Joint Ventures,* § 36 (1994).

Although it involved actual fraud by way of affirmative misrepresentations by one joint venturer to all the others substantially overstating the price at which the real estate owner was willing to sell, *Grover v. Marott* (1922) 192 Ind. 552, 559, 136 N.E. 81, 83 is worthy of note with regard to the duty of fair dealing. The court there stated:

> "Hence, we may say that all of the parties to the land venture were more or less engaged in a common enterprise, and each was bound to act in the utmost good faith toward the other. Consequently, speaking of appellant, in the light of the alleged facts, good faith required that he acquaint his associates or those he represented with all the facts known to him and connected with the entire transaction. It appears that he failed in this particular and that he knew the members of the syndicate were ignorant of facts by reason of which he would secretly acquire as his own a substantial profit out of the syndicate fund."

Although in the case before us, Eskew was aware and had consented to RNTA's acquisition of Adaline's interest by separate documents, that eventuality did not occur. Rather, Adaline somehow by secret negotiation extracted a greater purchase price for her interests than called for in the Base Agreements. In any event, most assuredly, Eskew did not know and did not agree that Adaline should unfairly and secretly receive what in reality equates to a greater percentage of the net sales price for the "aggregate interest of all interest holders."

I would reverse the judgment upon the pleadings entered in favor of Adaline as to the claims for breach of contract and breach of fiduciary duty, and would remand for further proceedings.