Christina M. ALLGOOD, individually and on behalf of all others similarly situated, Appellant–Plaintiff,

v.

MERIDIAN SECURITY INSURANCE COMPANY, Appellee–Defendant.

No. 49A02–0307–CV–580.

Court of Appeals of Indiana.

April 28, 2004.

Irwin B. Levin, Scott D. Gilchrist, Eric S. Pavlack, Cohen & Malad, LLP, James Keller, Keller & Keller, James H. Young, Young & Young, Indianapolis, IN, Attorneys for Appellant.

Brent W. Huber, Robert L. Gauss, Brian J. Paul, Ice Miller, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Christina Allgood appeals from the trial court's dismissal of her class action lawsuit against Meridian Security Insurance Company and denial of her own motion for partial summary judgment. We reverse.

### Issues

Allgood raises two issues for our review, which we restate as follows:

1. Whether the trial court properly determined that her complaint, alleging that Meridian breached a duty under an automobile insurance policy to pay for a loss to her automobile by paying only for repairs and not also for diminution in value, failed to state a claim upon which relief could be granted; and

2. Whether the trial court properly denied her motion for partial summary judgment which sought judgment as a matter of law that Meridian had a duty to compensate her for the inherent diminution in value of her automobile which remained after repairs had been made.

### Facts and Procedural History

Meridian insured a 1999 Pontiac Grand Am owned by Allgood. The policy of insurance included the following relevant provisions:

PART D—COVERAGE FOR DAMAGE TO YOUR AUTO

INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations.

* * *

LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

Appellant's Appendix at 100, 103.

Allgood's vehicle was damaged on June 6, 2001. Meridian paid the cost of repairs to her vehicle, but did not pay for any diminution in value over and above the cost of repair. Allgood initiated a class action lawsuit seeking damages against Meridian for its failure to pay for the diminished value of its insureds' vehicles

and injunctive relief in the form of a declaration that diminution in value was covered under the policy. Meridian filed a Trial Rule 12(B)(6) motion to dismiss and/or Trial Rule 12(C) motion for judgment on the pleadings. Allgood filed a response and a motion for partial summary judgment. After a hearing, the trial court entered an order denying Allgood's motion for partial summary judgment and granting Meridian's motion to dismiss, finding that the policy did not cover diminished value as a matter of law. Allgood now appeals.

*Discussion and Decision*

### I. Standard of Review

Meridian moved to dismiss Allgood's complaint for failure to state a claim upon which relief could be granted, alleging that as a matter of law, she was not entitled to compensation for diminution in value and thus could not prove her claim of breach of contract. Allgood in turn moved for partial summary judgment, seeking judgment as a matter of law that diminution in value can be recovered. Thus, the same substantive question was approached from two different procedural angles.

#### A. Meridian's Motion to Dismiss

The standard to be applied when ruling on a Trial Rule 12(B)(6) motion to dismiss or a Trial Rule 12(C) motion for judgment on the pleadings that raises the failure to state a claim upon which relief can be granted is whether the complaint is legally sufficient to constitute any valid claim. *Davis ex rel. Davis v. Ford Motor Co.,* 747 N.E.2d 1146, 1149 (Ind.Ct.App. 2001), *trans. denied.* We view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* We stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 710 (Ind.Ct.App.2001), *trans. denied.*

Both Trial Rule 12(B)(6) and Trial Rule 12(C) motions should be granted only when it is clear from the face of the complaint that under no circumstances could relief be granted. *Luhnow v. Horn,* 760 N.E.2d 621, 626 (Ind.Ct.App.2001).

In determining whether any facts will support the claim, we look only to the pleadings. *Town of Plainfield,* 757 N.E.2d at 710. The trial rules require the pleader to attach to its complaint the written document upon which its action is premised, however. *See* T.R. 9.2(A). Therefore, we may look to both the complaint and the attached contract for purposes of determining the appropriateness of the court's ruling. *Eskew v. Cornett,* 744 N.E.2d 954, 957 (Ind.Ct.App.2001), *trans. denied.* Where allegations of a pleading are inconsistent with terms of a written contract attached as an exhibit, the terms of the contract, fairly construed, must prevail over an averment differing therefrom. *Id.*

#### B. Allgood's Motion for Partial Summary Judgment

Summary judgment is appropriate where no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. When the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts; and, if the issue presented is purely a question of law, we review the matter de novo. *C.M.L. ex rel. Brabant v. Republic Services, Inc.,* 800 N.E.2d 200, 202 (Ind.Ct.App.2003), *trans. pending.*

## II. "Diminution in Value" as a Recoverable "Loss"

There is no dispute about the material facts of this case: Allgood was insured by Meridian for damage to her automobile. When her car sustained damage, she notified Meridian and it paid only to repair the damage. Allgood claimed that Meridian breached the contract of insurance by failing to fully compensate her for her loss, either because the contract unambiguously calls for compensation for diminution in value or because it is ambiguous and should be construed in her favor to require such compensation. Meridian claims that it satisfied the contract, which it claims is unambiguous and does not require compensation for diminution in value.

### A. Cases from Other Jurisdictions

No Indiana case has addressed the issue of whether a collision insurer is obligated to include payment for diminution in value. Cases from other jurisdictions are divided on this issue. Both parties have cited numerous cases from other jurisdictions supporting their respective positions.[1] As the cases favoring each side are premised on basically the same reasoning and similar provisions, we will look in depth at a representative case cited by the parties in support of their respective positions.

In *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001),

the Georgia Supreme Court held that the insurer was required to pay for the diminution in value of repaired vehicles. *Id.* at 123. The insureds brought a class action suit against the insurer seeking declaratory and injunctive relief. The relevant policy provisions were described as follows:

> . . . State Farm will "pay for loss to your car," minus any deductible. The policy also contains a provision limiting State Farm's liability to the lower of the actual cash value of the vehicle or the cost of repair or replacement, and a provision giving State Farm the right to settle a loss by paying up to the actual cash value of the car or paying "to repair or replace the property or part with like kind and quality." That provision also requires that the policyholder pay for any "betterment" resulting from repair or replacement.

*Id.* at 118. The court examined seventy-five years of Georgia case law dealing with an insurer's obligation to pay for diminution in value, beginning with *U.S. Fidelity & Guaranty Co. v. Corbett*, 35 Ga.App. 606, 134 S.E. 336, 338 (1926), which held that the undertaking to insure against "actual loss or damage" is the primary obligation, pursuant to which the measure of liability is the difference between the value of the property immediately before and immediately after the loss, and the limitation of

---

**1.** Allgood cites the following cases in support of the right to recover diminution in value: *Boyd Motors Inc. v. Employers Ins. of Wausau*, 880 F.2d 270 (10th Cir.1989); *MFA Ins. Co. v. Citizens Nat'l Bank of Hope*, 260 Ark. 849, 545 S.W.2d 70 (1976); *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222 (Colo.Ct.App.2000); *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001); *Dodson Aviation, Inc. v. Rollins Burdick Hunter of Kan.*, 15 Kan.App.2d 314, 807 P.2d 1319 (1991); and *Campbell v. Calvert Fire Ins. Co.*, 234 S.C. 583, 109 S.E.2d 572 (1959). Meridian cites the following cases which hold that the insurer is not liable for diminished value if the

repairs are adequate: *Driscoll v. State Farm Mut. Auto. Ins. Co.*, 227 F.Supp.2d 696 (E.D.Mich.2002); *Pritchett v. State Farm Mut. Auto. Ins. Co.*, 834 So.2d 785 (Ala.Civ.App. 2002); *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732 (Fla.2002); *Hall v. Acadia Ins. Co.*, 801 A.2d 993 (Me.2002); *Given v. Commerce Ins. Co.*, 440 Mass. 207, 796 N.E.2d 1275 (2003); *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16 (Mo.Ct.App.2002); *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 579 S.E.2d 132 (2003); *Black v. State Farm Mut. Auto. Ins. Co.*, 101 S.W.3d 427 (Tenn.Ct.App.2003); *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex.2003).

liability provision is subordinate, serving to abate the primary liability. The effect of a limitation of liability clause was clarified in *Simmons v. State Farm Mut. Auto. Ins. Co.*, 111 Ga.App. 738, 143 S.E.2d 55, 57 (1965), which noted the insurer's options for paying for the loss under the clause, but also noted that "no matter which alternative is chosen, the market value of the property ... after payment must equal the market value before the loss." Subsequently, in *State Farm Mut. Auto. Ins. Co. v. Smith*, 119 Ga.App. 447, 167 S.E.2d 610, 611–12 (1969), the Georgia Court of Appeals reiterated that if the insurer elects to repair the vehicle, its obligation is to restore to the insured the previous value of the vehicle, not just the previous condition, noting that the "insured must be made whole, except for any deductible, under any option." And *U.S. Fire Ins. Co. v. Welch*, 163 Ga.App. 480, 294 S.E.2d 713 (1982) held that "repair" as used in the limitation of liability provision did not mean "any repair," it meant "restoration ... to substantially the same condition and value as existed before the damage occurred." The Georgia Supreme Court summarized the state's history on this matter as follows:

> [V]alue, not condition, is the baseline for the measure of damages in a claim under an automobile insurance policy in which the insurer undertakes to pay for the insured's loss from a covered event, and ... a limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value.

556 S.E.2d at 121. Finally, the court noted that "the insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value." *Id.* at 122. The court noted that this result reflected "economic reality." *Id.*

Conversely, in *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732 (Fla. 2002), the Florida Supreme Court held that the insurer was not obligated to pay for the diminished value of a satisfactorily repaired vehicle. The policy at issue therein provided that it would pay for loss to an insured auto caused by collision in money or repair or replacement of the damaged property in like kind and quality. There was a "limit of liability" provision which provided that the insurer's limit of liability would not exceed the lesser of the actual cash value of the vehicle, the amount necessary to repair or replace with like kind and quality, or the amount shown on the declarations page. The insurer opted to repair the insured's vehicle following a collision, and despite being satisfied with the repairs, the insured initiated a lawsuit for breach of contract against the insurer seeking recovery of the inherent diminished value of her vehicle due to the collision. The trial court dismissed her complaint. The insured contended that the policy was ambiguous in that it failed to define several key terms. The Florida Supreme Court disagreed, holding that the policy was unambiguous, that the insurer's obligation was only to return the vehicle to substantially the same condition as before the loss, and that therefore, diminished value was not a loss covered by the policy. *Id.* at 739.

In Florida, insurance contracts are construed in accordance with the plain language of the policies.

\* \* \*

Clearly, the intent of the drafter of [the payment of loss and limit of liability] provisions was to provide the insurer with two options upon the occurrence of

a "loss." The insurer could reimburse the insured through money payment, *or* it could pay to repair or replace the automobile. If, as here, the repair option was chosen, the insurer's liability was limited to the monetary amount necessary to repair the car's function and appearance, commensurate with the condition of the auto prior to the loss.

*Id.* The court also noted a "nationwide split of authority" regarding this issue. *Id.* at 738.

### B. Indiana's Interpretation

■ The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution. A court may not rewrite an insurance contract. If an insurance contract is clear and unambiguous, the language must be given its plain meaning. However, if there is an ambiguity, the policy should be interpreted most favorably to the insured, and construed to further the policy's basic purpose of indemnity. Ambiguity in an insurance policy exists when the language is susceptible to more than one interpretation and reasonably intelligent persons could honestly differ as to the meaning of the policy language.

*Estate of Eberhard v. Illinois Founders Ins. Co.*, 742 N.E.2d 1, 2 (Ind.Ct.App.2000) (citations omitted). We make every attempt to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* at 3.

■ After due consideration of the cases cited by the parties as to this issue, we agree with those jurisdictions which have held the insurer responsible under similar policies for restoring value as well as condition to the insured. The limit of liability provision allowing the insurer to "repair or replace with like kind and quality" could reasonably mean, as Meridian posits, to restore to the insured a vehicle in a similar condition in appearance and function. However, it could also reasonably mean, as Allgood urges, to restore to the insured a vehicle similar in appearance, function *and* value.

"Like" is defined as "[p]ossessing the same or almost the same characteristics; similar ...; [a]like ...; [h]aving equivalent value or quality."[2] American Heritage Dictionary (4th ed.2000). "Kind" is defined as "[f]undamental, underlying character as a determinant of the class to which a thing belongs; nature or essence."[3] *Id.* "Quality" is defined as "[d]egree or grade of excellence: [as in] *yard goods of low quality.*"[4] *Id.* "Like kind and quality" therefore includes some inherent concept of value. The importance of this construction is illustrated in the extreme by the case of *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222 (Colo.Ct.App. 2000), *reh'g denied, cert. denied.*

Hyden owned a 1993 Jeep Cherokee that was involved in a collision in 1995. Prior to the accident, the Jeep was worth approximately $23,000. Hyden wanted the insurer to total the vehicle, but instead, the insurer elected to repair the Jeep at a cost of almost $17,000. In the opinion of a sales manager at a Jeep dealership, the Jeep was worth only $7,500 after the repairs. Hyden then sued his insurer for

**2.** Found at *http://www.bartleby.com/61/79/L0167900.html.*

**3.** Found at *http://www.bartleby.com/61/38/K0063800.html.*

**4.** Found at *http://www.bartleby.com/61/30/Q0013000.html.*

breach of contract.[5] The trial court granted summary judgment for the insurer, but the Colorado Court of Appeals reversed, stating that once the insurer elects its choice of remedy, it is responsible for providing the insured with a vehicle of "like kind and quality." Noting that phrase was ambiguous because it "fails to specify the protections afforded by the policy," the court construed the phrase against the insurer and held that "the insurer must provide the insured, through repair, replacement, and/or compensation, the means of acquiring a vehicle substantially similar in function and value to that which the insured had prior to his or her accident." *Id.* at 1225. The court also noted that although the insurer claimed that its only obligation was to return the vehicle in substantially the same condition as prior to the accident, a leading commentator had stated that "[a] vehicle is not restored to substantially the same condition if repairs leave the market value of the vehicle substantially less than the value immediately before the collision." *Id.* (quoting L. Russ, *Couch on Insurance* 3D § 175:47 at 175–54 (1998)). If there is diminished value even after repair, we do not consider the repairs to have been adequate, and therefore disagree with *Siegle* and the line of cases cited by Meridian in footnote one above because those cases assume that the repairs are adequate in denying compensation for diminution in value.

Meridian contends that such a construction improperly imposes a tort standard on a contract case. However, as we hold that the inclusion of value is supported by the language of the contract itself, we disagree. Meridian also contends that this construction reads any option out of the contract, as the insurer would in all cases be insuring the value of the vehicle. We disagree with this contention as well. Payment for the actual cash value of the vehicle will not necessarily equal payment for repairs plus diminution in value in every case. One option is bound to be a lesser liability for the insurer.[6] Thus, the limit of liability provision is not rendered meaningless by our construction.

 No reasonable insured would read a policy containing a limit of liability provision like that in *Hyden* or herein and assume that, if he were involved in a collision and turned to his insurer to cover the loss, he might be left with only one-third of what he had before the collision. In most cases, the disparity between pre-collision and post-repair value is probably not so

---

**5.** Hyden also asserted a claim for bad faith. The trial court granted summary judgment for the insurer as to this claim also, and the court on appeal affirmed that part of the judgment, holding there was no evidence to support such a claim. 20 P.3d at 1227.

**6.** It would be the rare case in which the value of a vehicle after a collision and subsequent repair would exactly equal the cost of repair. Say, for example, a vehicle is worth $7,000 prior to a collision. After the collision, returning the vehicle to its pre-collision condition would require repairs to the vehicle costing $4,000, and the vehicle would then be worth $6,000. The actual cash value under the "replace" option would require the insurer to pay $7,000. Repair plus a payment for diminution in value would require a payout of $5,000–$4,000 for repair, plus $1,000 for the diminished value of the vehicle. Alternatively, as in *Hyden*, the value of the truck immediately prior to the collision was $23,000. The insurer elected to repair the truck after the collision at a cost of $17,000, but the truck was then worth only $7,500. So the actual cash value for the replacement option was $23,000, and the repair plus diminution in value option would have cost the insurer $32,500–$17,000 in repairs, and $15,500 in diminished value. In that case, replacement would have been the better option for the insurer. In nearly every instance, one option—replace or repair plus diminution in value—would be the more economical option for the insurer.

drastic as in *Hyden.* But the fact remains that a vehicle that has been involved in a collision is considered to have less value than a vehicle identical in all respects except that it has not been involved in such a collision. In undertaking to compensate Allgood for "direct and accidental loss" to her vehicle through one of several options, Meridian is primarily obligated to restore to Allgood what she has lost. That may require not only repair of the vehicle or replacement of its parts but also compensation for the diminution in value. It will, of course, be up to the insured to prove the value of the vehicle immediately prior to the collision as opposed to the value following repair.

### Conclusion

The policy at issue provides that Meridian may, at its option, repair or replace a damaged vehicle with "like kind and quality." We construe that to include not only restoring to the insured a vehicle of similar physical condition, but also restoring to the insured a similar value as prior to the damage. Accordingly, we hold that in an appropriate case, diminution in value may be recovered by the insured. The trial court therefore erred in granting Meridian's motion to dismiss and in denying Allgood's motion for partial summary judgment on this issue. We therefore remand to the trial court for further proceedings consistent with this opinion.

Reversed.

SULLIVAN, J., concurs.

HOFFMAN, Sr.J., dissents with opinion.

HOFFMAN, Senior Judge, dissenting with separate opinion.

I respectfully dissent to the majority's rewrite of the contract between Allgood and Meridian.

As the majority has already stated, and I restate for emphasis, we may not rewrite an insurance contract if the language of the contract is unambiguous. *Estate of Eberhard v. Illinois Founders Insurance Co.,* 742 N.E.2d 1, 2 (Ind.Ct.App.2000). In interpreting the contract, we must attribute the plain meaning to the contract's language. *Id.*

The contract between Allgood and Meridian requires Allgood to pay her premiums and Meridian to pay for "loss." The contract limits Meridian's liability for loss to the lesser of (1) actual cash value of the stolen or damaged vehicle, or (2) the amount necessary to repair or replace the property with other property of like kind and quality. The operative term at issue is "repair," which is not an esoteric or technical term. It is instead, a common word with a plain meaning. In the last two years, at least nine courts have held that an insurer is not contractually obligated to pay for the diminution in value under contracts with substantially similar language to the language at issue here. These courts have premised their decisions on the fact that the term "repair" is unambiguous. A number of courts have relied on the definition of "repair" from BLACK'S LAW DICTIONARY 1298 (6th ed.1990), which states that the term means "to mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction." *See e.g., Pritchett v. State Farm Mutual Automobile Insurance Co.,* 834 So.2d 785 (Ala.Civ.App.2002), *cert. denied; Lupo v. Shelter Mutual Insurance Co.,* 70 S.W.3d 16 (Mo.Ct.App.2002), *trans. denied; Schulmeyer v. State Farm Fire & Casualty Co.,* 353 S.C. 491, 579 S.E.2d 132 (2003). These same courts, as well as several others, have also relied on the definition of "repair" as articulated in *Carlton v. Trinity Universal Insurance*

*Co.,* 32 S.W.3d 454, 464 (Tex.Ct.App.2000), defining "repair" as "bring[ing] back to good or useable condition." *See e.g., American Manufacturers Mutual Insurance Co. v. Schaefer,* 124 S.W.3d 154, 159 (Tex.2003) (citing cases relying on *Carlton's* definition of "repair"). Finally, courts have consulted popular dictionaries with similar definitions. *See e.g., Pritchett,* 834 So.2d at 791 (quoting MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1999) for the definition that "repair" means "to restore by replacing a part or putting together what is torn or broken: Fix"); *Hall v. Acadia Insurance Co.,* 801 A.2d 993, 995 (Me.2002) (quoting WEBSTER'S II: NEW RIVERSIDE UNIVERSITY DICTIONARY 996 (Soukhanov et al. eds., 1984) for the definition that "repair" means "to restore to sound condition after damage or injury"); *Given v. Commerce Insurance Co.,* 440 Mass. 207, 796 N.E.2d 1275 (2003) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (1993) for the definition that "repair" means "to restore by replacing a part or putting together what is torn or broken").

Stated simply, a reasonable insured would understand that an insurer was required by contract to "repair" his or her vehicle by paying someone in the car repair business to fix the tangible, physical damage to the vehicle. A reasonable insured would not understand "repair" to include "fixing" the intangible value caused by the market for "wrecked but repaired" vehicles. As the Maine Supreme Court stated in *Hall,* "[t]he necessary cost of a repair is fairly understood to mean the amount that will be required to fix the car, not, in addition, the difference between the amounts a hypothetical willing and able buyer might pay to purchase the vehicle in its pre-accident condition versus its post-repair condition." 801 A.2d at 995.

Furthermore, the majority changes the plain meaning of "repair" by making the "of like kind and quality" language refer to the act of repairing. In doing so, the majority ignores the language stating that the repair or placement will occur by provision of "other property" of the like kind or quality. It is clear that the "other property" referred to consists of either repair parts or a replacement vehicle of the like kind and quality, not to the provision of money to cover losses in market value.

Additionally, the majority's construction violates the basic tenet requiring a court to construe contract language in a way that does not render any words, phrases, or terms ineffective or meaningless." *See Farmers Insurance Exchange v. Smith,* 757 N.E.2d 145, 149 (Ind.Ct.App.2001), *trans. denied.* The "Limits of Liability" section of the contract between Allgood and Meridian provides that Meridian's liability is limited to the "lesser of" the "actual cash value" or the "amount necessary to repair or replace" the stolen or damaged property. The majority's construction, despite its unsupported assertion otherwise, excises the "lesser of" language from the contract. As the Texas Supreme Court opined in its evaluation of the same construction, "[t]he insurer's obligation to compensate the loss would be cumulative—repair or replace *and* pay diminished value—in effect insuring the vehicle's 'actual cash value' in every instance and undermining the insurer's right under the policy to choose a course of action." 124 S.W.3d at 159 (emphasis in original).

Finally, I disagree with the majority's conclusion that "[n]o reasonable insured would read a policy containing a limit of liability provision like that in *Hyden* or herein and assume that, if he were involved in a collision and turned to his insurer to cover his loss, he might be left

with only one-third of what he had before the collision." While it may be true that most, if not all, insureds would misread the contract's clear language in the vain "hope" that such a loss might be covered, a "reasonable insured" under contract law, unburdened by self-interest, would recognize the import of the contract's unambiguous language.

I would affirm the trial court's grant of Meridian's motion to dismiss and its denial of Allgood's motion for partial summary judgment.